## COMMONWEALTH *vs.* EDDIE SIMMONS.

Suffolk.   June 10, 1985. — July 11, 1985.

Present: GREANEY, C.J., KAPLAN, & FINE, JJ.

*Practice, Criminal,* Argument by prosecutor, Argument by counsel, Instructions to jury. *Evidence,* Consciousness of guilt.

At the trial of a criminal case in which the principal defense was an attack on the credibility of two police officers who were the sole eyewitnesses to the crime, improper argument by the prosecutor, stating that only a defendant who had no other defense available would put "the police on trial" and that the attack on the officers' credibility was a "red herring," did not, in the circumstances, create a substantial risk of a miscarriage of justice. [370-372]

At the trial of a criminal case, the judge's failure to instruct the jury that they could not convict the defendant on the basis of evidence of consciousness of guilt alone was harmless error, where defense counsel did not request an instruction on consciousness of guilt and did not object to the instruction given by the judge, and where, in light of the overwhelming evidence against the defendant, it was unlikely that he was convicted on the sole basis that he had given police a false name after he was arrested. [373-374]

INDICTMENT found and returned in the Superior Court Department on September 21, 1983.

The case was tried before *Andrew Gill Meyer,* J.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Kevin Connelly,* Assistant District Attorney, with him) for the Commonwealth.

GREANEY, C.J. On August 3, 1983, Officers John McCarthy and Richard F. Pimental of the Boston police were on duty wearing plainclothes in the "Combat Zone." About 4:15 P.M., McCarthy was on the street, and Pimental was in a nearby bar. At that time, McCarthy observed the defendant, Eddie

Simmons, struggling with the victim, who was clutching a wallet in his right hand. Simmons held the victim's right hand with his left hand and hit the victim twice on the arm and chest, grabbing the wallet as the man fell. Simmons turned and, upon seeing Officer McCarthy (and apparently sensing that he had been observed holding the wallet), told the officer that he had found the wallet on the ground. McCarthy took Simmons into the bar and asked Officer Pimental to hold him while he (McCarthy) went back outside to confer with the victim. After McCarthy left, Simmons asked Pimental to let him go, stating, "It was only a drunk, and I only took his wallet." When McCarthy returned, Simmons was placed under arrest. At that time, Simmons told McCarthy that his name was Kevin Smith. Later, during the booking procedure, Simmons printed the name "Keven Smith" on the form on which he acknowledged receipt of his rights.

The foregoing scenario was sketched by the testimony of Officers McCarthy and Pimental at Simmons' trial before a jury in the Superior Court on an indictment charging him with unarmed robbery.[1] In defense, Simmons' trial counsel concentrated on the close relationship between the two officers, inconsistencies between Officer McCarthy's trial testimony and his testimony before the grand jury, perceived deficiencies in the investigation,[2] and on the fact that the incriminating statements made by Simmons to Officer Pimental had not been written

---

[1] The victim did not testify at trial. Both officers testified to their unsuccessful efforts to locate him, which included a visit to the Pine Street Inn, where the victim had lived, scouting the streets in the Combat Zone where he had been seen, and following up on a telephone number contained in the victim's wallet.

[2] The cross-examination of Officer McCarthy brought out the following points: (1) that McCarthy and Pimental had worked together for over a year, (2) that McCarthy had testified before the grand jury that Simmons struck the victim in the face, while at trial he testified that the victim had been struck in the arm and chest, (3) that McCarthy had seen the victim after the incident but had failed to advise him about going to court, (4) that McCarthy had also failed to pursue other information in the wallet which might have located the victim, and (5) that McCarthy had failed to include in that portion of the application for a complaint entitled "Summary of the Case, Evidence of Facts" the fact that Simmons had made incriminating statements.

down on any official police report or form or in court documents (although one of the statements had been preserved on informal notes kept by Officer McCarthy). All of this was designed to create a reasonable doubt by implying that the police had fabricated the account of the incident for some unknown reason. Simmons did not take the stand. The jury found Simmons guilty of the offense charged. On appeal, Simmons seeks a new trial based on claims of improper final argument by the prosecutor and error in the judge's instructions on the concept of consciousness of guilt.

1. After a few preliminaries in his summation, Simmons' trial counsel got to the heart of the defense strategy by telling the jury the following:

> "Let's not mince words. I'm telling you — I'm arguing to you that what they [the officers] said from that witness stand was not true. They got up there and they lied to you. That may be a very hard thing for you to accept, but I'm suggesting to you, hear me out and make your decision according to the evidence and apply it to [the] standard of proof."

Counsel did not suggest a motive for the officers to lie, stating that the defendant had no burden to prove a reason for doing so. Simmons' trial counsel went on in his argument to point out inconsistencies in the officers' testimony, to dwell on the fact that the defendant's statements had not been written down in the incident report or in any court documents,[3] and to deal

---

[3] As to the absence of statements from official police reports, Simmons' trial counsel argued in closing as follows:

> "If you believe that [the officer's statement that he only writes such things down in big cases is] true, perhaps that leaves him [the officer] more flexible when he gets into court and a case seems to be in trouble.
>
> "If his practice is never to write a statement down, who's going to know whether there was a statement or not? Only him.
>
> "I suggest that this is not sloppy police work. I suggest that that wasn't written down because it was manufactured by one of these two police officers after the booking report was written, after the charges in this case were filed."

with Simmons' use of a false name. He concluded his argument by reiterating the theme that the police were lying.[4]

The prosecutor, not to be outdone, immediately countered in his closing by stating that Simmons had "very few cards to play in this case." The prosecutor then advanced the following maxim: "It's been said, 'If the facts are against you, you argue the law. If the law is against you, you argue the facts. . . . And if the facts and the law are against you, you put the police on trial." This argument drew a general objection. When pressed by the judge, Simmons' trial counsel indicated that the objection was directed to the "[i]t's been said" part of the argument (on the possibility that the language might be taken by the jury as expressing some well-established legal doctrine), and did not refer to that part of the argument which expressed the prosecutor's basic theme ("you put the police on trial"). Simmons' counsel then agreed with the judge that he would be satisfied if the prosecutor were to "clear up" the "[i]t's been said" part of the argument. The prosecutor, following this limitation, returned to the "police on trial" theme. He argued that the defendant changed his version of the facts several times. First, the prosecutor noted, the defendant claimed that he had found the wallet. Then (the prosecutor continued) when the defendant realized that he had been caught in the act, he tried "to talk his way out of it." The prosecutor developed this point in the following language: "Big deal. Who cares? The guy is a drunk." When this didn't work, the prosecutor stated, he gave "a phony name." "That didn't work either. So now he's before you. Again, he's desperate. Again, he has very

---

[4]   "They have gone to great lengths, ladies and gentlemen, to let you know about this supposed victim. They've described what he looked like, his clothing, strong smell of alcohol, went to the Pine Street Inn. You get the picture of what they're trying to suggest this victim was like.

"Well, if, ladies and gentlemen, if they're making this up, if this never happened at all and they wanted to come into court and testify about it, what kind of victim would you put in a made-up story? Wouldn't you put in a victim whose absence could easily be explained?
"   . . . .
"Is the fact that there is no victim present in court, is it because there was no victim to begin with? Was there no robbery at all?"

few cards to play. Here's his last card, put the police on trial."
The prosecutor's final statement on the theme was that "[m]y
client, the Commonwealth of Massachusetts, has the right to
have you fairly and squarely decide this case, not to be misled
by red herrings thrown across your path. The police aren't on
trial here. This man is. Ladies and gentlemen, he was caught
in the act."

Simmons' appellate counsel argues that the prosecutor's use
of the police-on-trial theme in this case was improper and
prejudicially undermined Simmons' right to a fair trial. The
absence of an objection at trial to the portions of the argument
now criticized narrows review to whether there was anything
in the argument which might have created a substantial risk
of a miscarriage of justice. See *Commonwealth* v. *Bradshaw*,
385 Mass. 244, 271 (1982); *Commonwealth* v. *Gaeten*, 15
Mass. App. Ct. 524, 526 (1983).

The prosecutor had the right to make "a fair response to the
defendant's obviously proper argument on [the officers'] cred-
ibility." *Commonwealth* v. *DeJesus*, 17 Mass. App. Ct. 1020,
1022 (1984). This included the right to point out that Simmons'
statements, considered in sequence, showed a progressive at-
tempt to talk himself out of a situation where he gradually
realized that he had been caught flat-footed. The prosecutor
also could permissibly comment upon the credibility of the
only likely defenses available to someone caught in the act by
the police, namely that the police were lying or mistaken. He
could also comment on the trial tactics employed by the de-
fense. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 272
(1982).

There are, however, problems with the prosecutor's final
argument. In a definite sense in this case, the police officers'
credibility was "on trial," as it ordinarily will be whenever the
police are the sole eyewitnesses to a crime and the main source
of the evidence by which the Commonwealth must make out
the elements of the crime. For the prosecutor to suggest other-
wise, and to refer to an attempt by the defense to discredit the
officers' testimony as injecting a "red herring" into the case,
was unfair. It was also inaccurate for the prosecutor to suggest

that the only time a defendant would, as the core of the defense strategy, attack the credibility of Commonwealth witnesses is when there is no other defense available. This is simply not so. By way of example, a defendant urging an alibi will frequently couple this defense with a vigorous attack on the credibility of Commonwealth eyewitnesses. Thus, it was unfair for the prosecutor to tell the jury that only a "desperate" defendant would ever assert that police officers lie. Moreover, the prosecutor's argument may have suggested to the jury that Simmons had neither the facts nor the law on his side, although the former was an issue for their decision, and the latter tended to invade the province of the judge. Finally, and possibly most troubling, the jury were invited by the argument to draw the inference that Simmons' very choice of defense suggested his consciousness of guilt.

Having pointed out the difficulties with the prosecutor's argument, we return to the dispositive question: Did the argument create a substantial risk of a miscarriage of justice? We conclude that it did not for the following reasons, considered cumulatively.

First, our review of the transcript does not leave us with the impression that we are dealing with a purposely overreaching prosecutor. Rather, we sense that the prosecutor had a valid point to make but simply expressed the point in an inappropriate manner. This conclusion receives support from the fact that neither Simmons' trial counsel nor the trial judge spotted the potential problems with the argument which Simmons' appellate counsel now raises.

Second, as the prosecutor properly argued, there was no motive suggested by the evidence to explain why the police officers might lie. This distinguishes the case from cases, for example, where there is a history of previous problems between the officers and the defendant, where one of the charges alleges an assault and battery on a police officer, where an internal police investigation of the officers' conduct is underway, where a civil action is pending or contemplated, or, perhaps, even where the testimony of independent eyewitnesses calls in question the police version of an incident. A direct attack by the

prosecutor in summation of such a case might very well require a new trial.

Third, defense counsel's suggested reasons for finding the police testimony suspect were not very weighty: (a) the inconsistencies in Officer McCarthy's trial testimony from his grand jury testimony were relatively minor; (b) one of the defendant's incriminating statements, while not recorded in any official police report, had been written down informally; and (c) the victim's absence from the trial appeared related to his status as a drifter. This left the jurors with Simmons caught in the act by two police officers who had no grudge against him or any obvious reason to lie. In other words, despite the attempted defense, Simmons was faced with an overwhelming case against him.

Fourth, the possible implication that the choice of defense itself evidenced consciousness of guilt was mitigated by both counsels' references in argument to consciousness of guilt only in connection with the defendant's use of a false name at the booking procedure and by the trial judge's instruction on that basis.

Fifth, the jury had been carefully selected by lengthy and painstaking individual voir dires in which potential jurors who believed that young black men were more likely to commit crimes, that police officers or Commonwealth witnesses were more believable than defense witnesses, or that a person who chooses not to testify must be hiding something were excused for cause or peremptorily challenged (in some cases, by the prosecutor).

Finally, the judge gave clear, strong and correct instructions on the presumption of innocence, the factors for judging credibility, the Commonwealth's burden of proof, and the fact that closing arguments are not evidence. The trial judge also cautioned the jury twice that they were not to let bias or prejudice enter into their decision or to draw inferences which were unreasonable. In the circumstances, the prosecutor's summation does not require that Simmons be given a new trial.

2. At the prosecutor's request, the judge instructed the jury on the issue of consciousness of guilt as set forth in the margin.[5] The instructions failed to inform the jury, as required, "that they are not to convict a defendant on the basis of evidence of [consciousness of guilt] alone . . . ." *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). *Commonwealth* v. *Matos*, 394 Mass. 563, 565-566 (1985). Simmons' trial counsel did not include among his written requests for jury instructions a request for an instruction on consciousness of guilt, and he made no objection to the instructions given by the judge.

However, in the *Matos* case, defense counsel requested an instruction on consciousness of guilt generally in the language suggested in the *Toney* case and preserved a proper objection to the judge's failure to instruct the jury in accordance with that language. Moreover, in the *Matos* case it was noted (at 565) that "[a]part from the evidence of . . . consciousness of guilt, the evidence against Matos was sufficient but not overwhelming" and that "[t]he Commonwealth relied on [the] evidence of [consciousness of guilt] in proving its case and . . . in its closing, the Commonwealth 'made much of the defendant's attempt to avoid apprehension.'"

---

[5] "There has in argument been some reference to consciousness of guilt on the part of the defendant after he was arrested. I want to instruct you on that point as follows.

"You the jury may or may not find that the defendant displayed some consciousness of guilt. That's up to you. Such a finding, if made, must be made by a process of inference from another fact or other facts that the jury finds.

"Was there some conduct on the part of the defendant or were there some statements made by him which displayed a guilty conscience, awareness on his part that he had committed the wrong or the wrongs for which he is now being tried?

"Did the defendant conduct himself in a way that was inconsistent with his innocence of those crimes?

"Any inference of consciousness of guilt should be drawn with great care, but if the evidence in this case satisfies you beyond a reasonable doubt that the defendant was conscious of his guilt, that is a permissible finding.

"Please understand that when I say it is a permissible finding, I am not suggesting it is a finding that ought to be made or that I would make or that I wouldn't make. I am just saying that that's a finding that you you may make if you decide you ought to make it on the basis of the evidence."

Here, by contrast, if the police officers were to be believed, Simmons was faced with an overwhelming case. As noted, the prosecutor's closing argument and the judge's instructions focused only upon Simmons' giving the name "Keven Smith" upon booking, rather than upon his other statements and actions. If Officer McCarthy's observations alone were not adequate for conviction, the observations, combined with Simmons' two incriminating statements, particularly the second statement about stealing a wallet from a drunk, were. Finally, the jury were told by both sides that the case boiled down to whether the police officers' version of the incident should be believed or disbelieved. For all of these reasons, it is unlikely that Simmons was convicted on the sole basis that he had concealed his name. We conclude that any defect in the judge's charge on consciousness of guilt was harmless.

*Judgment affirmed.*