## COMMONWEALTH vs. DAMON L. FLETCHER.

No. 99-P-1119.

Suffolk. March 2, 2001. - July 27, 2001.

Present: ARMSTRONG, C.J., GILLERMAN, GREENBERG, BECK, & BERRY, JJ.

*Practice, Criminal,* Assistance of counsel, Argument by prosecutor. *Constitutional Law,* Assistance of counsel, Search and seizure. *Search and Seizure,* Threshold police inquiry, Protective frisk.

On a direct appeal in a criminal case in which defense counsel was claimed to have been ineffective in failing to file a motion to suppress a firearm based on the defendant's initial encounter with police, where the initial encounter did not constitute an unconstitutional stop or seizure and a subsequent frisk of the defendant was constitutionally justified, the defendant failed to show that a motion to suppress would have had merit and that his trial counsel was remiss for failing to pursue the motion. [168-172]

At a criminal trial, the prosecutor's unobjected-to closing argument, while flawed in trivializing the standard of reasonable doubt and improperly suggesting that its invocation was simply a trial trick, did not pose a substantial risk of a miscarriage of justice, where forceful and direct instructions to the jury mitigated the effect of the prosecutor's remarks, and where the evidence supporting conviction was strong. [172-174]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on November 25, 1997.

The case was tried before *Thomas J. May*, J.

*Richard P. Heartquist* for the defendant.

*Kajal Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

BERRY, J. Following a jury trial, the defendant was convicted of unlawful possession of a firearm, G. L. c. 269, § 10(*a*), and disorderly conduct, G. L. c. 272, § 53.[1] The appeal raises two issues: (1) ineffective assistance of trial counsel in failing to file

---

[1]The defendant was sentenced to two and one-half years in a house of correction, one year to serve with the balance suspended; the disorderly conduct charge was placed on file with his consent.

a motion to suppress the firearm based on the initial encounter with the police; and (2) improper statements in the prosecutor's closing. Neither issue warrants reversal. We affirm the conviction.

*Background.* During the evening rush hour on November 24, 1997, Massachusetts Bay Transportation Authority (MBTA) police Officers Orth and Haddad were on duty in the Ashmont transit station. Officer Orth was completing a drive through the station in his cruiser. As he was driving up the center lane restricted for bus traffic, Orth saw three men standing outside of and banging on the windows of the driver's side of a bus stopped in the restricted lane. The bus had no passengers; the record does not indicate whether the driver was present in the bus. Orth moved his cruiser near the back of the bus, sounded the horn, left the cruiser, and approached the three men. He said in a loud voice, "Excuse me," and told them to come over and "talk to me for a second." The defendant and Daryl Anthony walked toward Orth. The other man, Bertrand Scully, walked away. Because he "ha[d] a thing about people in that area and stuff and making sure that [he was] safe . . . as [the men] approached, [Orth] asked them if they had weapons on them." There was no answer. At that point, Orth conducted a patfrisk of both men. He found nothing.

Following the fruitless frisk of the two, Orth told the defendant and Anthony they could leave the MBTA station, and both walked away. Orth then called Scully, who had not responded to Orth's original inquiry but instead had walked away in the opposite direction. As Scully walked by the defendant, the two men "kind of leaned into each other," and Orth saw Scully pass a large caliber handgun to the defendant. Orth gave Scully a "real quick" pat down and told him to leave the station. Scully walked away. Even though Orth had observed the weapon, he did not make any arrest because of his concern that something untoward might happen in the crowded station. At this point, Orth noticed Haddad signaling him. Haddad then

quickly approached Orth to relay information Haddad had obtained from a passerby.[2]

The focus of the defendant's ineffective assistance appeal is that trial counsel, in a suppression motion, should have challenged this initial police encounter as unconstitutional under *Terry* v. *Ohio*, 392 U.S. 1 (1968), and United States Supreme Court and Massachusetts cases decided in its wake. Accordingly, as to the subsequent events, it is enough to state that the three men did not leave the station, but instead, boarded a trolley car. Orth pulled the cruiser in front of the trolley, and the two officers entered the trolley and ordered the three men to stand with their hands up. All three were pat frisked inside the trolley, and then were taken outside and frisked again. No gun was found. The three men were handcuffed together, and Orth stayed with them. Haddad searched inside the trolley and seized a loaded .45 revolver from underneath a seat within inches of where the three men had been standing. The officer inspected the gun and observed it had a defaced serial number. Because possession of such a weapon is a criminal offense, all three were placed under arrest.

*Framework for review of ineffective assistance in the search and seizure context.* The governing standards of *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), are directed to determining whether inadequate representation by an attorney deprived a defendant of an "otherwise available, substantial ground of defence." *Id.* at 96. Where the claimed omission in ineffective representation is the failure to file a suppression motion, post-trial analysis of whether there was a lost defense depends, in turn, upon post hoc analysis of whether a hypothetical suppression motion would have been allowed had one been filed. "The failure of counsel to litigate a *viable* claim of an illegal search and seizure is a denial of the defendant's Federal and State constitutional right to the effective assistance of counsel" (emphasis in original). *Commonwealth* v. *Pena*, 31 Mass. App.

---

[2]The information given to Haddad by the passerby was excluded as hearsay. We note that hearsay is admissible in a motion hearing relating to suppression and, therefore, had such a motion been filed, this information would have been available for appellate review. See the discussion of a motion for new trial, *infra.*

Ct. 201, 204 (1991), citing *Kimmelman* v. *Morrison*, 477 U.S. 365, 382-383 (1986). The determination whether such a suppression claim is viable involves dual assessments. "When a claim of ineffective assistance of counsel concerns an attorney's failure to raise a Fourth Amendment or an art. 14 issue, the defendant must show that the constitutional claim has merit *and* that there was a reasonable possibility that the verdict would have been different without the excludable evidence" (emphasis added). *Pena*, 31 Mass. App. Ct. at 205, citing *Kimmelman*, 477 U.S. at 375. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983). If a defendant meets the burden of establishing both elements, the alleged attorney ineffectiveness in not litigating the constitutional search and seizure issue warrants reversal on the affected counts encompassed in the verdict; conversely, if either element is not established, the verdict will stand. "We should recall that in a case where ineffective assistance of counsel is charged, there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). We turn, then, to the question whether a suppression motion directed at the initial encounter would have prevailed.

*Analysis of the initial encounter with the police.* The defendant contends that the complex of actions consisting of the officer sounding the cruiser horn, alighting from the cruiser, approaching the three men standing in a public transit station, and loudly asking them to come over to him constituted an unconstitutional seizure. See *Terry* v. *Ohio*, *supra*. We disagree. Case law, both State and Federal, does not support the proposition that the initial exchange between Officer Orth and the defendant was an unconstitutional stop or seizure. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 (1991) (officer did not seize the defendant within the meaning of the Fourth Amendment merely by approaching the defendant, identifying himself as a police officer, and asking that the defendant take his hands out of his pockets). See also *Commonwealth* v. *Doulette*, 414 Mass. 653, 655 (1993) ("trooper had every right to be in that public parking lot and to get out of his cruiser"). The

actions of Officer Orth were proportional[3] to the circumstances presented: it was reasonable for the officer to undertake a brief threshold inquiry of the three men who were engaging in the disorderly and unorthodox conduct of pounding on the side of a stopped bus in a public transit station crowded with people during the evening rush hour commute; and it was reasonable for the officer, standing alone during the initial encounter with three individuals, to ask if the men had weapons on them. "Particularly in a modern urban setting, [] the carrying of guns in public is, if not by itself indicative of crime, . . . at least a matter of serious public safety concern to the police." *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994) (citations omitted). See *Commonwealth* v. *Toole*, 389 Mass. 159, 163 (1983); *Commonwealth* v. *Couture*, 407 Mass. 178, 180-181, cert. denied, 498 U.S. 951 (1990).[4] Nothing in the State or Federal Constitution prohibits the police from conducting such a brief inquiry in these circumstances. Having observed the disruptive actions of the men, Orth's actions to this point — stopping and stepping out of a cruiser that was properly patrolling a public transit station, calling over to the men, approaching them, and asking about a weapon — did not constitute a stop or seizure. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry*, 392 U.S. at 19 n.16. No constitutional prohibition "prevents a policeman from addressing questions to anyone on the streets." *Id.* at 34. Accord *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980), setting forth the analysis that police have seized a person in the constitutional sense "only if, in view of all of the

---

[3]"*Terry* and [*Florida* v.] *Royer*[, 460 U.S. 491 (1983),] state a 'principle of proportionality.' . . . The degree of intrusiveness on a citizen's personal security, including considerations of time, space, and force, must be proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985) (citations omitted).

[4]While the Supreme Judicial Court has held that merely "[c]arrying a gun is not a crime," *Commonwealth* v. *Alvarado*, 423 Mass. 266, 269 (1996), the court has also made clear that the context in which the gun manifests itself is to be considered. Here, the disorderly conduct of the defendant and his companions and the furtive transfer of the gun present a "scenario [which] is a far cry from a defendant who [is] merely . . . seen in public with a handgun, and without any opportunity to respond as to whether he has a license, is . . . subjected to an invasive search." *Couture, supra* at 182-183.

circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." See also *Florida* v. *Royer*, 460 U.S. 491 (1983). "Massachusetts courts have adhered to the test set forth in the *Mendenhall-Royer* line of cases." *Commonwealth* v. *Stoute*, 422 Mass. 782, 786 (1996).[5] To state this court's application of the standard: "Under the *Mendenhall* test, the police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." *Fraser*, 410 Mass. at 543-544. Our conclusion that the initial actions of Officer Orth did not constitute a stop or seizure and that the defendant and Daryl Anthony were not restricted from walking away from the officer is supported by the fact that the third individual did precisely that — he walked away. That the defendant and Anthony affirmatively responded to Officer Orth's request and walked over did not transform the event into an unconstitutional investigatory stop and seizure.

We have analyzed and determined the validity of the initial inquiry in light of the principle that an ineffective assistance claim may be resolved on direct appeal "when the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). However, such a factual basis does not appear in this record with respect to the defendant's further assertion that trial counsel was incompetent in also not directing a suppression motion to Orth's frisk of him. Whether a frisk is constitutionally justified may depend on a host of factors in any particular case. As was the case here, a frisk is a part of unfolding events, all of which are "interconnected and dynamic; observations made, and events occurring . . . [leading] to heightened suspicion (justifying further inquiry) . . . or to plain view seizures." *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 642 (2001).

---

[5]In *Stoute*, the Supreme Judicial Court expressly declined to change the *Mendenhall-Royer* standard which, in determining whether there has been a seizure, focuses on whether there is an objective reasonable belief in freedom to leave, even though the United States Supreme Court had departed from this standard in *California* v. *Hodari D.*, 499 U.S. 621 (1991). In *Hodari D*, the Court held that a seizure depends upon the application of some form of physical force, resulting in either actual or constructive detention. *Id.* at 624-625.

Such a pattern of evolving events is reflective of the phenomenon that "[s]treet encounters between citizens and police officers are incredibly rich in diversity," *Terry*, 392 U.S. at 13, and "[i]t is that diversity that yields the abundance of 'highly fact-based questions,' . . . frequently implicating, as here, constitutional rights." *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 522 (1995) (citation omitted).

Because the defendant did not file a pretrial motion to suppress the evidence, i.e., the gun that resulted from the confrontation and the frisking of the defendant and his companions, as required by Mass.R.Crim.P. 13(a), 378 Mass. 871 (1979), the Commonwealth had no occasion to adduce evidence of the circumstances that caused Officer Orth to frisk the men. Without the factual record that such a motion would have generated, we are not in a position to conclude that such a motion would have been allowed and, thus, that trial counsel lost for the defendant the benefit of an available, substantial defense. For all that the present record discloses, the trial judge might well have acted properly in denying the motion to suppress. Without prejudicing the defendant's opportunity to raise this claim later by way of a motion for a new trial, we can only conclude that, on his direct appeal, the defendant has failed to show that a motion to suppress would have had merit and that his trial counsel was remiss for failing to pursue it. This case falls within the usual rule "that claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial." *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999).

*The prosecutor's closing.* The defendant recites a litany of criticisms of the prosecutor's closing. Although not outcome determinative, the lack of objection is "some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989), quoting from *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). Where there is no objection at trial, our standard of review is narrowed. We first seek to determine whether or not there was error. Next, if there was error, our appellate review is limited to deciding whether there was a substantial risk that a miscarriage of justice

occurred. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 271 (1982); *Commonwealth* v. *Gaeten*, 15 Mass. App. Ct. 524, 526 (1983). "Under that standard, we assess the [challenged statements] at issue 'in light of the entire argument, the judge's instructions, and the evidence at trial.' " *Commonwealth* v. *Johnson*, 429 Mass. 745, 749 (1999), quoting from *Commonwealth* v. *Payne*, 426 Mass. 692, 697 (1998). Measuring the entire closing argument against this standard, we conclude that, while the prosecutor's argument was flawed in the respect discussed below, the closing did not pose a substantial risk of a miscarriage of justice.

Certain of the criticisms now leveled on appeal take statements in the closing out of context, other closing remarks are wrongly described, and still other references are de minimis and do not individually or cumulatively suggest a substantial risk of a miscarriage of justice. There was, however, an improper construct in the prosecutor's closing which — although we do not find it so egregious as to warrant reversal — merits discussion. The prosecutor argued as follows:

> "Ladies and gentlemen, I once had a professor in law school who taught my criminal class. And when the law is not on your side, jump up and down hard on the facts. But when the facts aren't on your side, jump and down [*sic*] and run for the law, cry for reasonable doubt. And I would suggest to you today, that is the defendant's case. Jump and down [*sic*] (inaudible) beyond a reasonable doubt."

This construct suffers from the defect that it trivializes reasonable doubt and improperly suggests that its invocation is simply a trial trick. We expressed disapproval of a similar rhetorical construct in *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 371 (1985), because it "suggested to the jury that [the defendant] had neither the facts nor the law on his side, although the former was an issue for their decision, and the latter tended to invade the province of the judge." See *Commonwealth* v. *Olszewski*, 401 Mass. 749, 760 & n.10 (1988), criticizing this rhetoric and citing *Simmons* with approval. In this case, the improper argument did not give rise to a substantial risk of a miscarriage of justice because, as in *Simmons*, there were forceful and direct jury instructions that mitigated the effect of the

remarks[6] and the evidence supporting the convictions was strong (including firsthand eyewitness observation of the defendant possessing the firearm). Given those countervailing points, we do not believe that the ability of the jury to identify and sort through rhetorical devices invoked by counsel was compromised or unduly influenced by this errant reference. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 451 (1993); *Commonwealth* v. *Pike*, 430 Mass. 317, 327 (1999).

Notwithstanding that this rhetorical construct was expressly criticized in *Simmons* and *Olszewski*, its re-emergence in this case reflects that the previous admonitions were obviously not heeded. We take this occasion to reiterate that this line of argument is improper and should not be used.

*Judgment affirmed.*

---

[6]As in *Simmons*, the remarks were counterbalanced by strong instructions by the judge on the issues of credibility, weight of the evidence, and reasonable inferences. Moreover, the charge fully and correctly addressed the Commonwealth's burden of proof and the legal standards for proof beyond a reasonable doubt, and at several points in the charge reiterated this burden of proof. The judge's instruction thereby mitigated any prejudice from the prosecutor's sarcastic, and better left unsaid, references to "cry[ing] for reasonable doubt." Further, in declining to conclude that there was a substantial risk of a miscarriage of justice, we take into consideration that the two earlier cases (*Simmons* and *Olszewski*) were not principally directed to this inartful aphorism standing alone, but rather as it was linked to a "police on trial" theme.