## COMMONWEALTH VS. JOHN ANDERSON.

No. 01-P-456.

Middlesex. January 22, 2003. - May 14, 2003.

Present: JACOBS, BERRY, & KAFKER, JJ.

*Mayhem. Assault and Battery by Means of a Dangerous Weapon. Assault and Battery. Intoxication. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Instructions to jury, Lesser included offense.

At the trial of an indictment charging the defendant with mayhem, even assuming that the omission of an instruction to the jury to consider the defendant's intoxication in determining whether he had the capacity to formulate the specific intent to maim or disfigure the victim was error, either on the part of defense counsel in failing to request such an instruction or on the part of the judge for not giving such an instruction sua sponte, the lack of such an instruction did not result in a substantial risk of a miscarriage of justice, given the strength of the Commonwealth's evidence and the fact that the judge twice instructed the jury concerning the requirement of finding specific intent as an element of proof on the mayhem offense. [120-124]

At a criminal trial, defense counsel did not render ineffective assistance in cross-examining a particular witness regarding her cooperation agreement with the Commonwealth, in not seeking redress for the prosecution's alleged presentation of false and misleading testimony, in not moving for a mistrial when a witness referred to the fact that the defendant was in jail, in asking a question of a police officer that elicited a response which revealed the defendant's prior arrest in an unrelated matter, or in not objecting to a police officer's reference to the defendant's declining to make a formal statement after an interview. [124-127]

This court declined to decide whether a criminal defendant's counsel rendered ineffective assistance in failing to file a motion to suppress statements that the defendant had made to police, where the defendant's failure to file a motion for new trial on this issue pretermitted the development of a complete record that would allow for fully informed appellate review and decision. [127-128]

Where the charge in an indictment against a criminal defendant for assault and battery by means of a dangerous weapon was a lesser included offense of a charge in a second indictment for mayhem (second theory), upon which charge the defendant was convicted, this court ordered that the conviction and sentence on the charge of assault and battery by means of a dangerous weapon be vacated and that the indictment on that charge be dismissed. [128]

INDICTMENTS found and returned in the Superior Court Department on September 25, 1997.

The cases were tried before *Charles T. Spurlock,* J., and a motion for a new trial, filed on May 10, 2000, was heard by him.

*David H. Mirsky* for the defendant.

*Gregory H. Matthews,* Assistant District Attorney (*Afton M. Templin,* Assistant District Attorney, with him) for the Commonwealth.

BERRY, J. Following a jury trial, the defendant advances a series of issues in this appeal from his convictions on mayhem, assault and battery by means of a dangerous weapon, and assault and battery (two counts).[1] One issue involves an intertwined claim of ineffective assistance of trial counsel and judicial error, i.e., that trial counsel should have requested an intoxication instruction and that, even though not so requested, the trial judge had an independent responsibility to give sua sponte an intoxication instruction in connection with the ability to form specific intent to commit mayhem. The six remaining issues are presented in the context of, and are posed as, ineffective assistance of counsel claims. Five of these ineffective assistance issues relate to counsel's performance at trial, and allege that defense counsel was ineffective (1) in not seeking redress for the prosecution's alleged presentation of false and misleading testimony by the defendant's former girlfriend, Rita Parks, concerning her involvement in the assault; (2) in not objecting to a police officer's reference to the defendant's declining to make a formal statement after an interview, which is characterized as a *Doyle* violation, *Doyle* v. *Ohio,* 426 U.S. 610 (1976); (3) in not cross-examining Parks regarding her cooperation agreement with the Commonwealth; (4) in failing to move for a mistrial when Parks testified that the defendant had priests call her from jail; and (5) in asking a question of a police officer that elicited a response which disclosed the

---

[1]The two assault and battery convictions were placed on file. The defendant was found not guilty on a charge of assault with intent to murder. Glenn Tetrault was named as the victim in the indictments charging mayhem, assault and battery by means of a dangerous weapon, assault with intent to murder, and one count of assault and battery. Jay Carney was named as the victim in the other indictment charging assault and battery.

defendant's prior arrest in an unrelated matter. See part 3, *infra*. The sixth ineffective assistance issue concerns counsel's failure to file a pretrial motion to suppress. See part 4, *infra*. For the reasons stated herein, the issues raised on appeal do not warrant reversal of the convictions.

However, although not raised as an issue on appeal, the conviction and sentence on the charge of assault and battery by means of a dangerous weapon cannot stand because this offense is a lesser included offense of mayhem (second theory).[2] See G. L. c. 265, § 14. On the mayhem conviction, the defendant was sentenced to fifteen years to fifteen years and one day at MCI, Cedar Junction, and on the charge of assault and battery by means of a dangerous weapon, he was sentenced to a concurrent nine- to ten-year sentence. We therefore order that the conviction and sentence on the charge of assault and battery by means of a dangerous weapon be vacated, and the indictment on that charge dismissed.

1. *Factual background.* The evidence before the jury may be briefly summarized thusly. Rita Parks and the defendant were dating. During the day in question, August 1, 1997, the two had been drinking at various locations, and, as evening drew near, they made their way to Captain John's bar in Lowell. Parks happened to sit at the bar next to the victim, Glenn Tetrault, who expressed a sexual innuendo about her breasts. Parks related the remark to the defendant. Angered by this comment directed to his girlfriend, the defendant followed Tetrault outside the bar. Parks came along. The defendant began throwing punches, and Tetrault fell to the ground. The assault intensified, as the defendant kicked and stomped on Tetrault's face and head. As the attack was ongoing, a bystander, Jay Carney, saw a pool of blood and observed the victim's head bouncing up and

---

[2] "Mayhem (second theory) is essentially an assault and battery by means of a dangerous weapon, with the additional aggravating factors of a specific intent to maim or disfigure, and certain forms of resultant physical injury. Therefore, the latter is a lesser included offense of the former. 'The appropriate remedy for the imposition of duplicative convictions is to vacate both the conviction and sentence on the lesser included offense, and to affirm the conviction on the more serious offense.' *Commonwealth* v. *Mello*, 420 Mass. 375, 398 (1995)." *Commonwealth* v. *Martin*, 425 Mass. 718, 722-723 (1997) (footnote omitted).

down on the pavement, as the defendant continued to deliver blows. Carney sought to intervene and stop the beating, but was attacked by the defendant. As the latter two tussled, Parks joined the fray and jumped on Carney. The attack upon Carney was the predicate for one of the defendant's two convictions for assault and battery.

2. *The intoxication instruction.* The defendant was tried under the second theory of mayhem, "requir[ing] evidence of a specific intent to maim or disfigure." *Commonwealth* v. *Martin,* 425 Mass. 718, 722 (1997). See G. L. c. 265, § 14. The issue presented is whether the jury should have been instructed to consider the defendant's intoxication in determining whether he had the capacity to formulate specific intent to maim or disfigure Tetrault. The defendant did not request such a voluntary intoxication instruction, and the judge did not give one.

"Where an offense requires proof of specific intent and there is evidence 'tending to show' that the accused may have been intoxicated at the time of the offense, *the judge, if requested, must instruct the jury* to consider the defendant's intoxication in determining whether the Commonwealth has proved that specific intent beyond a reasonable doubt" (emphasis added). *Commonwealth* v. *Traylor,* 43 Mass. App. Ct. 239, 243-244 (1997), citing *Commonwealth* v. *Henson,* 394 Mass. 584, 593 (1985).[3] However, "[v]oluntary intoxication instructions are not required where the evidence does not suggest a condition of

---

[3]Apart from the *Traylor* and *Henson* precedent, which, if the evidence so establishes, mandates the giving of a *requested* intoxication instruction, the defendant cites two cases, *Commonwealth* v. *Fano,* 400 Mass. 296 (1987), and *Commonwealth* v. *Lawrence,* 404 Mass. 378 (1989), as suggesting that — even if not requested by a defendant — a trial judge has an independent responsibility to give such an intoxication instruction. There is a reference to a judge sua sponte giving such an instruction in both cases, the later case quoting the earlier one. However, we have reservations whether the cases can be construed to impose any mandatory judicial obligation to give such an intoxication instruction. In one of the cited cases, *Fano,* a defense request for an intoxication instruction had, in fact, been filed by the defendant. *Commonwealth* v. *Fano,* 400 Mass. at 305. The problem was that the proposed instruction misstated the law. *Id.* at 306. Given the rejection of the incorrect proposed instruction, the issue, then, was whether the judge, independently and sua sponte, should have crafted and delivered a correct intoxication instruction. *Ibid.* In the other case, *Lawrence,* there was no defense based on intoxication, and there was no notice to the judge that intoxication was an

'*debilitating intoxication*' that could support a reasonable doubt as to whether a defendant was capable of forming the requisite criminal intent" (emphasis added). *Commonwealth* v. *James*, 424 Mass. 770, 789 (1997).

The Commonwealth disputes that an intoxication instruction was warranted because the evidence did not demonstrate that the defendant had reached this heightened level of intoxication. Therefore, the Commonwealth posits, it was neither ineffective assistance in failing to request such an instruction, nor judicial error in not delivering one in the jury charge.

Based on our review of the trial evidence, we think it is questionable whether the defendant was inebriated to the point of debilitation, such as to warrant an intoxication instruction. In fact, there was countervailing evidence that the defendant was alert, had his faculties about him, and demonstrated clear cognitive processing of information. Parks testified that, while in the bar, the defendant was dancing and acting fine, and was not drunk at the time he went outside to follow Tetrault. Beyond Parks's description, the defendant communicated responsively and intelligently with the police within moments of the beating. Officer Kevin Hawes and Sergeant Brendan Durkin of the Lowell police were the first to arrive at the scene. Sergeant Durkin detected an odor of alcohol, but the defendant was steady on his feet and did not appear to have any trouble in understanding what was being said to him and responding thereto. While not as immediate in time to the acts of mayhem as was this initial police encounter, approximately five hours later during further processing at the police station, the defendant also appeared fully alert. Sergeant Joseph Murray detected only a slight odor

issue. *Commonwealth* v. *Lawrence*, 404 Mass. at 395. In both cases, the court rejected the need for any such sua sponte instruction on intoxication. We need not resolve the meaning of the sua sponte references in *Fano* and *Lawrence*, and whether the cases can be read to impose any requirement that a judge give an intoxication instruction, even if one is not requested. We need not do so because the same standard of appellate review applies whether the defendant's claim is analyzed as one of ineffective assistance in not requesting, or as one of unpreserved judicial error in not giving an intoxication instruction. On both points, the standard of review is whether the failure to instruct on voluntary intoxication resulted in a substantial risk of a miscarriage of justice. Cf. *Commonwealth* v. *Fano*, 400 Mass. at 306-307; *Commonwealth* v. *Lawrence*, 404 Mass. at 395.

of alcohol. The defendant had no difficulty standing or walking. Sergeant Murray's perception was that the defendant knew where he was and what he was doing. The defendant "absolutely was not slurring his words." Moreover, the defendant told Sergeant Murray that he felt fine. The foregoing does not present a picture of debilitating intoxication.

Notwithstanding the evidence that the defendant was not intoxicated to the point of debilitation, we pause in consideration of the amount of beer consumed by the defendant throughout the evening.[4] With such pause and for purposes of analysis, we will assume hypothetically that an intoxication instruction was warranted. We will further assume hypothetically that omission of such an instruction was either the result of ineffective assistance of counsel, or unobjected-to judicial error. But even with these assumptions, our "review [of] the evidence and the case as a whole, considering the strength of the Commonwealth's case, as well as the nature and significance of the alleged errors," *Commonwealth* v. *Chase*, 433 Mass. 293, 299 (2001), does not persuade us that the lack of a voluntary intoxication instruction resulted in a substantial risk of a miscarriage of justice. Cf. *Commonwealth* v. *Lawrence*, 404 Mass. 378, 395 (1989).

In this respect, we are not persuaded that, had such an intoxication instruction been given, it would have materially influenced the guilty verdict, or been of such effect, when applied to the trial evidence, to render it inferentially plausible that the jury's verdict on the mayhem charge would have been different. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10,

---

[4]On the question of intoxication, the contravening evidence lies in the testimony concerning the amount of beer that the defendant had consumed throughout the course of the evening. Parks could not remember precise times, but from her account which referenced various approximate times, it appears that she and the defendant arrived at the DKLV bar in the early evening, perhaps as early as 4:30 P.M. to 5:00 P.M. At this drinking establishment, Parks and the defendant had five or six beers. Thereafter, the two returned to the defendant's house, where they split a six-pack of beer. Later in the evening, between approximately 8:00 P.M. and 8:30 P.M., Parks and the defendant arrived at Captain John's, where, over the course of the ensuing several hours, each consumed three mugs of beer. The beating occurred sometime around 1:00 A.M to 1:30 A.M.

21 (1986). In reaching this determination, we consider the strength of the Commonwealth's evidence, including, but not limited to, the evidence that, notwithstanding his alcohol consumption, the defendant remained in control of his faculties — a cognitive affect from which a jury could further conclude that the defendant was capable of forming the requisite specific intent to commit mayhem. In addition to proof concerning the defendant's mental functioning, the brutal nature of the assault bespeaks of the defendant's ability to formulate specific intent. The defendant's repeated stomping on Tetrault's head was so forceful that the victim's head bounced up and down on the sidewalk. See *Commonwealth* v. *Hamm*, 19 Mass. App. Ct. 72, 80 (1984) (where defendant "stomped" on victim's head and face, evidence was sufficient to support mayhem conviction). Moreover, the severity of the resulting injuries also supports the theory that the crime was perpetrated with specific intent. The beating of Tetrault was so savage that his face was rendered unrecognizable, and the resulting disfigurement so substantial that reconstructive surgery was required. "Specific intent may be inferred from the nature of the injuries as well as evidence that 'the injuries arose from a sustained or atrocious attack.' " *Commonwealth* v. *Sparks*, 42 Mass. App. Ct. 915, 916 (1997), quoting from *Commonwealth* v. *Cleary*, 41 Mass. App. Ct. 214, 217 (1996). Accord *Commonwealth* v. *Doucette*, 391 Mass. 443, 456 (1984) ("the nature and number of the wounds are inconsistent with a claim of debilitating intoxication" so as to negate specific intent).

We also consider that the judge twice instructed the jury concerning the requirement of finding specific intent as an element of proof on the mayhem offense, first at the beginning of the case and second in the final charge. The judge's carefully calibrated instructions reduced any substantial risk of a miscarriage of justice by focusing the jury searchingly on the precise question whether the defendant had the specific intent to maim or disfigure the victim.[5]

Thus, even assuming there was error — either by the defense

---

[5] In defining such specific intent, the judge instructed as follows: "the Commonwealth must prove beyond a reasonable doubt that the Defendant committed the proscribed act upon Mr. Tetreault [*sic*] with the specific intent to maim

attorney or the trial judge — in the omission of an intoxication instruction, after a full review of the evidentiary record and the comprehensive and well-stated instructions, we are not "left with uncertainty that the defendant's guilt has been fairly adjudicated."[6] *Commonwealth* v. *Chase,* 433 Mass. at 299.

3. *Ineffective assistance of counsel: trial-related claims.* The defendant claims ineffective representation by his trial counsel in contravention of his Federal and State constitutional rights to counsel. The Commonwealth argues that the defendant has waived any ineffective assistance challenge to his counsel's conduct during the trial because the issue was not raised in the new trial motion.[7] We disagree. "A claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides,* 37 Mass. App. Ct. 339, 344 (1994). See *Commonwealth* v. *Fletcher,* 52 Mass. App. Ct. 166, 171 (2001). In our view, the claims concerning counsel's trial performance, as fully developed in the existing trial record, fall within this exception.[8]

a. *The cooperation agreement.* The defendant criticizes his

---

or disfigure him. The word maim has no technical meaning and should be construed in its plain, ordinary sense. Maim has been defined more widely as meaning to disable, wound or cause bodily harm or disfigurement of the body. Thus, the Commonwealth must prove by either direct or circumstantial evidence [that] the Defendant had a reasonable appreciation that a disabling or disfiguring injury would result from his acts and that he meant to cause that result."

[6]The split verdict, by which the jury acquitted the defendant of assault with intent to commit murder, also a specific intent crime, provides some indicia that the lack of an intoxication instruction did not create a substantial risk of an unfair jury verdict.

[7]The defendant filed a pro se motion for a new trial which was denied. The defendant does not appeal from that ruling. That motion alleged a denial of due process due to unspecified discovery violations. None of the ineffective assistance claims the defendant raises in this appeal were presented in his motion for a new trial.

[8]This limited venue, which allows for review of ineffective assistance claims in special cases where the contested issue concerning the attorney's performance is clear on the extant record, is a narrow exception to the general principle that "claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial." *Commonwealth* v. *McCormick,* 48 Mass. App. Ct. 106, 107 (1999). The distinction is, in fact, illustrated by this appeal, wherein we can, and do, review the merits of the trial-related ineffective assistance claims. But, in contrast, given

counsel's inadequate efforts in cross-examining Parks regarding her cooperation agreement with the Commonwealth. While trial counsel for a defendant might seek to make much cross-examination hay of a cooperation agreement in order to reap doubt concerning a cooperating witness's credibility, here there were countervailing considerations weighing against such a full-scale attack.[9] For example, the defendant had an interest in having the jury find parts of Parks's testimony credible, such as her testimony concerning the amount of beer consumed. See note 4, *supra*.

Furthermore, the defendant was not prejudiced because the nature of Parks's agreement with the government was explored in her direct testimony. It was thus made clear to the jury, as Parks acknowledged, that she had a "deal" with the government, by which in exchange for providing evidence in connection with the charges against the defendant, Parks had received the reduced and lenient sentence of pretrial probation for one year on the charges of assault with intent to murder and assault and battery by means of a dangerous weapon in connection with the beating. The jury also had available for their review the cooperation agreement, which was admitted as an exhibit without objection. Lastly, the judge comprehensively instructed the jury on how to assess a witness's credibility, including bias or motive to lie. The judge also issued a cautionary instruction that the jury were not to infer anything for or against either side regarding the fact that the defendant was on trial alone and that the potential guilt of any other person was not to sway the jury's thinking.

b. *The false testimony claim.* Parks testified that, once outside Captain John's, the defendant began fighting with Tetrault. She did not refer to her being involved in the fray. The defendant contends that this testimony, which diminished Parks's involve-

the inadequacy of the record on the Miranda waiver, we cannot and do not reach the claim of ineffectiveness alleged concerning counsel's failure to file a motion to suppress. See part 4, *infra*.

[9]That the limited cross-examination on the cooperation agreement was a strategic election and not inadvertence is evinced when one considers counsel's aggressive cross-examination of Parks on other fronts, including her history of substance abuse and psychiatric problems, and the fact that she was "buzzed" on the night of the assault and "glad" that the defendant came to her rescue.

ment in the beating, was materially misleading, and that the prosecutor so knew and wilfully presented distorted and falsely misleading testimony to the end of "impermissibly bolster-[ing]" Parks's credibility by reducing her role in the assault. The defendant has not met — indeed has not come close to meeting — the threshold of establishing that the prosecutor knowingly presented false testimony. Cf. *Commonwealth* v. *Ortiz,* 53 Mass. App. Ct. 168, 174 (2001).

c. *The prison reference.* In his direct examination of Parks, the prosecutor sought to elicit evidence demonstrating that the defendant had sought to influence Parks's testimony by offering to marry her. Notwithstanding the prosecutor's thoughtful admonition to the witness in pretrial preparation not to mention that the defendant was in jail, Parks included in her response that the defendant's entreaties occurred "[e]very time I talked to him, or [when] he had priests call my house *from prison"* (emphasis added). There was an objection and a side bar conference ensued; during this colloquy, defense counsel specifically requested that the judge *not* give a cautionary instruction because it "would do more harm than good." This decision not to draw further attention to the passing remark, even as referenced within the mode of a limiting instruction, was not manifestly unreasonable and does not establish ineffective assistance of counsel.

d. *The reference to the prior arrest.* The defendant criticizes his lawyer's performance as inept and contrary to his best defensive interest, in that, so the defendant says, his counsel purposely sought to elicit what the defendant characterizes as prior bad act evidence of his arrest for an unrelated matter. We see no such purposeful effort by defense counsel. Instead, when the questioning is read in context, it is clear that counsel was seeking by the inquiry to elicit from Officer Hawes that drinking had affected the defendant's speech. In responding to the question whether this was the first time he had heard the defendant speak, Officer Hawes stated, "no," because he had arrested the defendant on a prior occasion. Although the reference was better left unsaid, it was not purposely elicited by defense counsel.

e. *The reference to no formal statement.* Sergeant Murray

testified to the substance of an oral statement by the defendant made at the police station. (The defendant's statement to the officer is summarized in part 4, *infra*.) Sergeant Murray further testified that, at the conclusion of the interview, he asked whether the defendant would be willing to make a formal statement, but the defendant declined, and the interview ended. Defense counsel did not object to this testimony. Contrary to the defendant's argument, we do not discern a violation under *Doyle* v. *Ohio*, 426 U.S. 610, 616-618 (1976), nor do we read the reference as evidence of guilt. Furthermore, any adverse inference that theoretically may have flowed from the reference was dispelled by the trial judge twice instructing, contemporaneously with Sergeant Murray's testimony, that a person has the right to decline to make statements to the police, and that the jury were not to consider the defendant's refusal to provide a formal statement.

4. *The motion to suppress.* The defendant made two statements to the police which were admitted in evidence at trial. The first statement was made to Sergeant Durkin, who responded to the crime scene, and the second statement was made to Sergeant Murray at the police station.[10] The defendant claims that his attorneys (there were three) gave ineffective assistance in not filing a motion to suppress the statements on the basis that the defendant was too drunk to knowingly, intelligently, and voluntarily waive his Miranda rights.

Where the claimed omission in ineffective representation is the failure to file a suppression motion, the inquiry involves dual assessments. "[T]he defendant must show that the constitutional claim has merit and that there was a reasonable

---

[10]Prior to giving each statement, the defendant was read the Miranda warnings, indicated that he understood his rights and was willing to speak to the officer, and then did so. Although the statement given at the crime scene differs in some minor aspects from the one given at the police station, the gist of both statements is the same. In both statements, the defendant denied any involvement in the attack on Tetrault. The defendant claimed that Parks's pocketbook was stolen by someone in the bar, the defendant chased the thief in pursuit, was jumped by the thief and others, and a struggle ensued. Throughout this, the defendant did not notice Tetrault lying on the ground and only saw Tetrault when the police pointed him out across the street. The blood splattered on the defendant was his own. The defendant did not know why he had been arrested.

possibility that the verdict would have been different without the excludable evidence." *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. at 169, quoting from *Commonwealth* v. *Pena*, 31 Mass. App. Ct. 201, 205 (1991). The defendant presses this claim on direct appeal, notwithstanding that the trial evidence suggests that the defendant's ineffective representation claim would not meet either of these tenets. However, in the final analysis, because the defendant's failure to file a motion for a new trial on the ineffective assistance claim (see note 7, *supra*) pretermitted the development of a complete record which would allow for fully informed appellate review and decision, we decline to reach this claim. "Without the factual record that such a motion [for a new trial] would have generated, we are not in a position to conclude that such a motion [to suppress] would have been allowed and, thus, that trial counsel lost for the defendant the benefit of an available, substantial defense. For all that the present record discloses, the trial judge might well have acted properly in denying the motion to suppress." *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. at 172.

The conviction for mayhem upon Glenn Tetrault is affirmed. The conviction and sentence on the charge of assault and battery by means of a dangerous weapon upon Glenn Tetrault is vacated, and the indictment on that charge is dismissed.

*So ordered.*