COMMONWEALTH *vs.* JONATHAN HOGG
(and twelve companion cases[1]).

Suffolk.    April 1, 1974. — May 9, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Identification.   Practice, Criminal,* Argument of prosecutor, Mistrial, Lesser included crimes, Judicial discretion, Trial of defendants together, *Evidence,* Exhibits, Relevancy and materiality. *Accessory.   Joint Enterprise.*

A finding by the judge at a trial for armed robbery that in-court identifications of the defendants by the victim were independent of his identifications of them at a prior lineup was not disturbed by this court, even though a subsidiary finding exaggerated somewhat the time the defendants were with the victim at the scene of the robbery. [293]

An inadvertent reference by the prosecutor in his closing argument at a trial for armed robbery to inadmissible lineup identifications of the defendants by the victim was not ground for a mistrial where the

---

[1] Of the companion cases six are against David S. Monroe and six are against Ernest K. Williams, Jr.

prosecutor made no further reference to the lineup and defence counsel had also referred to the lineup in cross-examination of the victim. [293-294]

Two spent bullets, one removed from the room in which the victim of armed robbery was shot and the other removed from him at a hospital, were properly admitted in evidence at the trial of the defendants where a complete chain of custody was established for each bullet, even though there may have been weaknesses in the chains. [294-295]

Where there was no rational basis in the evidence at a criminal trial for verdicts acquitting the defendants of offences charged and convicting them of lesser included offences, there was no error in the court's refusal to instruct the jury as to the lesser included offences. [295]

At the trial of indictments for assault and battery by means of a dangerous weapon and armed assault with intent to murder against a defendant who did not shoot the victim, conviction of the defendant was warranted by evidence that he gave the orders to a codefendant who shot the victim, or that the defendant was engaged in a joint enterprise with that codefendant and harbored a willingness to see the shooting take place if necessary to effectuate his plans. [295-296]

Where the defendant and his two codefendants were arrested in each others' company and indicted for illegal possession of firearms at the time of the arrests, but the two codefendants were also indicted for more serious crimes committed an hour and one-half before the arrests, there was no abuse of discretion in the refusal of the defendant's motion for severance, and in trying the three defendants together on all the charges. [296-297]

At the trial of an indictment for unlawfully carrying a firearm, the admission in evidence of rubber gloves found on the person of the defendant at the time of his arrest added nothing of substance and was not error. [297]

THIRTEEN INDICTMENTS found and returned in the Superior Court on December 6, 1971.

The cases were tried before *Roy,* J.

*Kenneth Weiss* for the defendants David S. Monroe & another.

*Harvey M. Pullman* for the defendant Jonathan Hogg.

*Angelo Morello,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendants were tried together to a jury, and appeal from their convictions under G. L. c. 278, §§ 33A-33G. Monroe and Williams were convicted on

indictments charging each of them with armed robbery, assault and battery by means of a dangerous weapon, armed assault with intent to murder, kidnapping, larceny of a motor vehicle, and unlawfully carrying a weapon. Hogg was convicted on a single indictment charging him with unlawfully carrying a firearm. We affirm all the convictions.

We summarize the evidence on behalf of the Commonwealth. About 8:30 A.M. on September 14, 1971, Thomas Fratto was sitting in his car on Arlington Street in Boston. Monroe and Williams, both armed with .38 caliber pistols, ordered him into the back seat, took his wallet, and placed a rope around his neck. They bought gasoline with Fratto's money. Monroe drove first to Franklin Park and then to an abandoned apartment house in Dorchester. Monroe told Williams to take Fratto to the third floor, and Williams did so and tied and gagged Fratto. Later Monroe entered the room, tightened the bonds, and both assailants left the room. Still later Williams returned, tightened the bonds again, and, when Fratto struggled, shot him four times.

Despite his wounds Fratto managed to alert neighbors, who called the police. Officers arrived at the scene about 9:40 A.M. and Fratto gave them a description of his car, including the license number; he described the assailants simply as "two black guys." This information was given to the police radio dispatcher, and police officers soon observed the car in Mattapan. Shortly after 10 A.M. the car was stopped and its three occupants arrested and searched. Monroe, the driver, had a loaded .38 caliber pistol; Williams, in the right rear seat, had a loaded .38 caliber pistol and a knife and was wearing rubber gloves; Hogg, in the left rear seat, had a loaded .25 caliber pistol, a knife and rubber gloves. Fratto's wallet was on the floor of the car.

A spent bullet found in the abandoned apartment house could have been fired from Williams's pistol. One of two bullets removed from Fratto had been so fired. Tests indicated the presence of blood on the knives taken from Williams and Hogg.

1. *Identification.* At a lineup on October 13, 1971, nearly a month after the crimes and shortly after his release from the hospital, Fratto identified Monroe and Williams as his assailants. After a voir dire held during the trial, the judge suppressed testimony as to the lineup because the defendants were not represented by counsel at the lineup. He found, however, that there was nothing suggestive in the lineup or related proceedings and that the in-court identifications of the defendants by Fratto, beyond a reasonable doubt, were independent of anything that happened at the lineup; and he allowed the in-court identifications by Fratto to stand. These findings were supported by subsidiary findings, and the subsidiary findings, except in one respect, were supported by the testimony. The defendants correctly point out that the judge found that Monroe and Williams "were in the company of Fratto for about half an hour in an automobile in the daylight, and between 15 and 20 minutes in the house where Fratto was shot," but that Fratto's testimony was that both assailants were out of the room during part of the fifteen to twenty minutes. We do not think this discrepancy is material, and we decline to disturb the judge's conclusion. *Commonwealth* v. *Murphy*, 362 Mass. 542, 548 (1972), and cases cited.

In his closing argument, the prosecuting attorney referred to the lineup.[2] On prompt objection, the judge said there was "no evidence of that before the jury," the prosecuting attorney apologized, and no further reference to the lineup was made. The judge denied motions for a mistrial, concluding that the reference was inadvertent. There was no error. The defence counsel had previously brought the subject of the lineup to the attention of the jury in recross-examination of Fratto, and the judge could properly conclude that the danger of prejudice from an inadvertent improper remark was not so substantial as to require a mistrial. See *Commonwealth* v. *Smith*, 342 Mass.

---

[2] "Mr. Foreman and ladies and gentlemen of the jury, if any of you were so unfortunate to live through that experience which Fratto did, could you ever erase from your minds the faces of your assailants? And that is illustrated by the fact that when Mr. Fratto went to the line-up - - -."

180, 187-188 (1961). A more specific instruction to the jury
on the point was not requested; moreover, such an instruc-
tion might have tended to emphasize the improper remark.

2. *Bullets.* Monroe and Williams contend that two
spent bullets admitted in evidence were not properly
identified. As to one, a police officer from the crime
laboratory testified that he saw another officer pick up a
bullet in the apartment house where Fratto was shot.
Shown a bullet, he testified, "It appears to be the same."
Later a police ballistician testified that he received the
bullet from the officer who picked it up and that guns taken
from Monroe and Williams were capable of firing such a
bullet.

As to the second bullet, the doctor who operated on
Fratto at the hospital testified that he removed two bullets
from Fratto and gave them to a nurse. The assistant
director of the operating room testified that a nurse
received the bullet offered in evidence and, in the ordinary
and usual course of business, a receipt was made out
naming Fratto and the doctor. A police officer testified that
he picked up the bullet and signed the receipt at the
hospital and that he turned the bullet over to the ballistics
unit and received a second receipt. The receipts were
admitted in evidence. The ballistician testified that he
received the bullet from the officer who picked it up at the
hospital, that another officer signed the receipt for it, that
he test fired the gun taken from Williams and that in his
opinion the spent bullet was fired from the weapon.

There was no error. A complete chain of custody was
established for both bullets. Compare *Commonwealth* v.
*Rodriquez,* 364 Mass. 87, 94-95 (1973); *Commonwealth* v.
*Pickles,* 364 Mass. 395, 399 (1973). In the case of the
bullet from the hospital, there was evidence to warrant the
findings required by G. L. c. 233, § 78 (business records).
See *Commonwealth* v. *Leonard,* 352 Mass. 636, 644 (1967).
We need not decide whether the receipt given the hospital
was also admissible under G. L. c. 233, § 79 (hospital
records). See *Commonwealth* v. *Franks,* 359 Mass. 577,
579-580 (1971). If there were weaknesses in the chain of

custody, that would go to the weight of the evidence rather than to its admissibility. *Commonwealth* v. *White,* 353 Mass. 409, 419-420 (1967), and cases cited. See McCormick, Evidence (2d ed.) § 212 (1972).

3. *Lesser included crimes.* Monroe claims error in the judge's refusal to charge the jury that, under the indictment for armed robbery, the jury could find the defendant guilty of unarmed robbery, larceny, or assault. Williams claims error in refusal to charge that, under the indictment for larceny of a motor vehicle, the jury could find the defendant guilty of use without authority. G. L. c. 278, § 12. *Commonwealth* v. *Novicki,* 324 Mass. 461, 466 (1949). *Commonwealth* v. *Subilosky,* 352 Mass. 153, 166-167 (1967). *Commonwealth* v. *McCauley,* 355 Mass. 554, 559 (1969).

Where there is no "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense," no instruction need be given on the lesser offence. Am. Law Inst., Model Penal Code, § 1.07 (5) (Proposed Official Draft, 1962). *Commonwealth* v. *McKay,* 363 Mass. 220, 228 (1973). *Driscoll* v. *United States,* 356 F. 2d 324, 327 (1st Cir. 1966), vacated on other grounds 390 U. S. 202 (1968). *People* v. *Mussenden,* 308 N. Y. 558, 562-563 (1955). There was no rational basis in the testimony for a conclusion that Monroe and Williams robbed Fratto but were unarmed, that they stole his wallet or car otherwise than through force or fear, that they assaulted him without weapons and without stealing, or that they took his car only for a "joy ride." The judge properly instructed the jury that larceny required an intent to deprive the owner permanently of his property and that if one or both defendants "were just going to skylark, using it without authority and bring it back to him, or abandon it at a place where it might be recovered, they would not be guilty of larceny." The judge was not obligated to assist the jury to come to an irrational conclusion.

4. *Assaults by Monroe.* Monroe asserts error in the denial of his motions for directed verdicts on the indictments charging him with assault and battery by means

of a dangerous weapon and armed assault with intent to murder. It is not enough that Monroe may have known beforehand that Williams intended to commit an assault and battery on Fratto by means of a gun or to murder him by shooting him, even though Monroe joined in concealing the completed crime. *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970). But the evidence warranted a finding that Monroe was the man who gave the orders to Williams as well as to Fratto, and that he thereby counseled, hired or otherwise procured the assault and battery by means of a gun and the armed assault with intent to murder. Alternatively, a finding was warranted that Monroe was engaged in a joint enterprise with Williams and harbored a "conditional or contingent" purpose, "a willingness to see the shooting take place should it become necessary to effectuate" his plans. *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). Compare *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973).

5. *Severance.* Hogg moved for a separate trial, stating that a joint trial would result in prejudice by denying him the opportunity to call his codefendants as witnesses and by confusing the jury as to the complex and numerous issues presented. He also informed the judge that he desired a jury waived trial. In response to a question from the judge, the prosecuting attorney said that severance would not put the Commonwealth to great expense but that the indictment of Hogg arose out of his arrest in the company of Monroe and Williams after the series of crimes charged against them. The judge then denied the motion for severance, and Hogg withdrew his request for a jury waived trial.

Severance rested in the sound discretion of the judge. *Commonwealth* v. *Iannello*, 344 Mass. 723, 727-728 (1962), and cases cited. *Commonwealth* v. *Connearney*, 359 Mass. 200, 204-205 (1971). The three defendants were all charged with illegal possession of firearms at the time they were arrested together, and the judge could assume that the same evidence would be offered to prove these offences against each. Compare *Commonwealth* v. *Blow*, 362 Mass.

196, 200-201 (1972). The other charges against Hogg's codefendants arising out of their conduct during the hour and one-half before the arrest, were not likely to be confused with the charge against Hogg, and the record contains no indication of such confusion. The possibility of testimony on behalf of Hogg by the codefendants was not elaborated, but remained colorable or speculative. See *United States* v. *Bumatay*, 480 F. 2d 1012, 1013-1014 (9th Cir. 1973); *People* v. *Bornholdt*, 33 N. Y. 2d 75, 87-88 (1973), cert. den. sub nom. *Victory* v. *New York*, 416 U. S. 905 (1974). There was no abuse of discretion.

6. *Hogg's knife and gloves.* Hogg asserts error in the admission in evidence of a knife and rubber gloves found on his person at the time of his arrest. No exception was taken as to the knife, and we do not consider it. *Commonwealth* v. *Foley*, 358 Mass. 233, 236 (1970). As to the gloves, no exception was taken to the testimony of a police officer that he found such gloves on Hogg's person at the time of arrest, but there was an exception to the admission in evidence of the gloves themselves. They added nothing of substance to the testimony. *Commonwealth* v. *Locke*, 335 Mass. 106, 113 (1956). See *Commonwealth* v. *West*, 357 Mass. 245, 247-248 (1970).

*Judgments affirmed.*