Kevin **BARRY**

v.

Edward **FICCO**

No. CIV.A. 03–CV10686RGS.

United States District Court,
D. Massachusetts.

Sept. 26, 2005.

---

Eva M. Badway, Attorney General's Office, Boston, for Souza Baranowski Correctional Center, Defendant.

Leslie W. O'Brien, Winchester, for Kevin Barry, Plaintiff.

*MEMORANDUM AND ORDER ON
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION*

STEARNS, District Judge.

Upon review of the Magistrate Judge's Report and the petitioner's objections, I will adopt her Recommendation and order the petition dismissed. The Magistrate Judge correctly concludes that both grounds asserted in the petition are barred by procedural default. She is also correct that a motion to suppress would not have succeeded in light of the custodial inventory rule of *United States v. Edwards,* 415 U.S. 800, 807–808, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). *See also Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). While Massachusetts may in some respects enforce the rule more strictly, *see Commonwealth v. Bishop,* 402 Mass. 449, 451, 523 N.E.2d 779

(1988), a federal habeas court is guided by federal law and the decisions of the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner's hearsay claim is less a testimonial objection than an impugning of the chain of custody preceding the appearance of his boots as evidence at trial. Weaknesses in the chain of custody go to the weight and not the admissibility of evidence. That is the rule in both the federal and state courts. *See United States v. Scharon*, 187 F.3d 17, 22 (1st Cir.1999); *Commonwealth v. Hogg*, 365 Mass. 290, 294–295, 311 N.E.2d 63 (1974).

## ORDER

For the foregoing reasons, the Recommendation of the Magistrate Judge is *ADOPTED* and the petition is *DISMISSED.*

SO ORDERED.

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

On January 22, 1998, the petitioner Kevin Barry ("Barry" or the "petitioner") was found guilty by a Worcester Superior Court jury of larceny of a motor vehicle (Mass. Gen. Laws ch. 266, § 28), eight counts of larceny of property with a value of more than $250.00 (Mass. Gen. Laws ch. 266, § 30), larceny of property with a value of $250.00 or less (Mass. Gen. Laws ch. 266, § 30) and breaking and entering a truck or trailer (Mass. Gen. Laws ch. 266, § 20A). The court found the petitioner to be a common and notorious thief under Mass. Gen. Laws ch. 266, § 40, and he was sentenced on these and other charges to which he had pleaded guilty, to a term of ten to fifteen years. The petitioner is presently serving that sentence.

Following several unsuccessful motions seeking primarily to set aside his guilty pleas, Barry's convictions were affirmed by the Massachusetts Appeals Court in an unpublished opinion on August 1, 2000. *Commonwealth v. Barry*, 49 Mass.App.Ct. 1120, 735 N.E.2d 1274 (2000) ("*Barry I*"). His application for leave to obtain further appellate review ("ALOFAR") was denied by the Massachusetts Supreme Judicial Court ("SJC") without opinion on September 29, 2000. *Commonwealth v. Barry*, 432 Mass. 1109, 738 N.E.2d 750 (2000) (table). His post-convictions motions, including a motion for a new trial pursuant to Mass. R.Crim. P. 30(a) and (b), and a motion for reconsideration, were denied. The Appeals Court entered its unpublished decision rejecting the petitioner's new claims on June 18, 2002. *Commonwealth v. Barry*, 55 Mass.App.Ct. 1104, 770 N.E.2d 558 (2002) ("*Barry II*"). Barry's ALOFAR was denied by the SJC without opinion on September 6, 2002. *Commonwealth v. Barry*, 437 Mass. 1107, 774 N.E.2d 1098 (2002) (table).

This matter is presently before the court on Barry's petition for a writ of habeas corpus. Therein he contends (1) that he was denied effective assistance of counsel "when his trial counsel failed to move to suppress a pair of boots that was the only evidence arguably connecting the petitioner to the scene of the crime," and that this argument was not procedurally defaulted, and (2) that he was denied effective assistance of counsel "when his trial counsel failed to object to hearsay evidence that was the only evidence connecting the boots to the petitioner, and therefore to the scene of the crime" and when his appellate counsel failed "to raise in the direct appeal the issue of trial counsel's ineffectiveness in failing to object to the

hearsay evidence, which was a winning issue under Massachusetts case law." Memorandum in Support of Petition for Writ of Habeas Corpus (Docket No. 1) ("Pet.Mem.") at 1–2. Because this court finds that a motion to suppress would not likely have been successful, and that the admission of the challenged testimony did not create a substantial risk of a miscarriage of justice warranting reversal of the convictions, this court recommends to the District Judge to whom this case is assigned that the Petition for Writ of Habeas Corpus be DENIED.

## II. *STATEMENT OF FACTS* [1]

### *The Underlying Crime*

Barry's convictions arise from a break-in at the West Boylston RV Center in West Boylston, Massachusetts, during the early morning of May 30, 1995. The relevant facts, as found by the Appeals Court in its unpublished Memorandum and Order Pursuant to Rule 1:28, *Barry I* (SA Ex. 6) are as follows.[2]

> In the early morning of May 30, 1995, approximately twenty-five pieces of entertainment equipment including televisions, VCRs, radios, and CD players were removed from ten trailers on the premises of West Boylston RV Center (RV Center). A company pickup truck was also stolen and Massachusetts registration plate 808ZNT was removed from another vehicle on the lot.
>
> The West Boylston police department discovered two sets of footprints tracking between the trailers and returning repeatedly to an initial point. The footprints were consistent with the defendant's boots in manufacturing characteristics, size, width, and degree of wear.
>
> Several days later, on June 3, 1995, the defendant was seen in Cherryfield, Maine driving a pickup truck described as "identical" to the stolen truck. At 1:46 A.M. on June 4, 1995, a resident of Highland Avenue in Augusta, Maine noticed a suspicious vehicle on his street and telephoned the local police department. When the responding police cruiser drove past the parked truck, three individuals got out of the truck and ran. The abandoned truck was the same as that stolen from the RV Center and had attached to it the stolen Massachusetts registration plate 808ZNT.
>
> Approximately four hours later, Officer Richard Dubois of the Augusta police department stopped the defendant at a traffic rotary 1.6 miles from where the truck had been abandoned. The area between Highland Avenue and the traffic rotary was described as a wooded area with tall grass and a steep embankment. The defendant was wet and muddy from the waist down, his jacket was dirty, and he was wearing brown work boots. The defendant identified himself as "David Jennings" and gave Officer Dubois three different social security numbers.

(Footnote omitted).

### *Footprint/Boots Evidence*

At trial, the following evidence was adduced relating to the boots and footprints which are the basis of the habeas petition.

---

1. The respondent has filed a two volume Supplemental Answer containing the record below (Docket Nos. 7A & 7B) which will be cited as "SA Ex.___". In addition, the petitioner has filed the three volume transcript (Docket No. 13) which will be cited as "Tr. (Vol.No):(page)."

2. The Appeals Court's findings of fact are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

After Officer Dubois of the Augusta police department stopped Barry on June 4, 1995, he asked Barry to come down to the police station to be fingerprinted and photographed for I.D. purposes only. (Tr. I:122). Barry agreed and went to the station. (Tr. I:123). He was released about two hours later, around 8:00 A.M., without being charged with anything. (Tr. I:123–24). No prints or photographs were apparently taken of his boots.

Officer Mark Morrissey of the Sheriff's Department testified at trial. His brief testimony, which the petitioner now objects to as being inadmissible hearsay, was as follows:

Q. Did you become aware that on June 23rd of 1995, boots were taken from Kevin Barry by a member of the Sheriff's department staff?

A. Yes.

Q. What was done with those boots if you know?

A. They were taken and given to Officer Hanlon, which in turn Officer Hanlon gave the boots to myself.

Q. What town was Mr. Barry in when these boots were seized from?

A. West Boylston, MA.

Q. Did you come into contact or possession of these boots at some point?

A. Yes, I did.

Q. And what did you do with the boots?

A. They were put in an evidence bag and given to Detective Glynn of the West Boylston Police Department.

(Tr. I: 130–31). There were no objections to this testimony, and no cross-examination.

Officer Francis Glynn of the West Boylston Police Department also testified. (Tr. I:132). He testified that he had gone to the crime scene on May 30, 1995. (*Id.*). He testified as to the damage he observed, as well as to the footprints he observed which had been formed in the dirt apparently because of severe rains which had fallen between midnight and 2:00 A.M. that morning. (Tr. I:133–34). He took photographs of some of the prints, which were introduced as exhibits without objection. (Tr. I:134–41). Officer Glynn also testified as to a plaster cast he had taken of one of the footprints. (Tr. I:141–42). While the trailers and RVs were dusted for fingerprints, none were found. (Tr. I:142). Officer Glynn gave the following testimony about receiving Barry's boots:

Q: At some point did you come into possession of a pair of boots?

A: Yes, I did.

Q: And can you tell us who gave you those boots?

A: Those boots came from Deputy Mark Morrissey from the House of Correction.

Q: What did you do with these boots upon receipt?

A: I received those boots and then I transported them to the Leominster State Police crime scene services.

Q: What happened after the boots were taken from the Leominster State Police?

A: They were reviewed and [testimony stricken]

Q: Did you come into possession of those boots again?

A: Yes, I did.

Q: What did you do with those boots at that point?

A: Those boots were taken back to my station and put in evidence. Then they were transported to State Police crime lab in Sudbury, Massachusetts.

Q: Did you ask somebody to look at those boots and the impressions that you had taken at the state police lab in Sudbury?

A: Yes, I did. I showed them to a Sergeant Rebeiro.

(Tr. I:142–44). Officer Glynn continued his testimony about a foam impression he made of the right boot and an ink overlay that was done. (Tr. I:144–46). The boots were entered into evidence without objection. (Tr. I:146). Officer Glynn was cross-examined about the prints at the scene, and about the impressions and photographs he had taken. (Tr. I:150–59). He was not questioned about how he had come into possession of the boots.

State Police Officer Deborah Rebeiro testified as well. (Tr. I:163). She testified (and was cross-examined) as to her examination of the boots, prints, photographs and related evidence, as well as to a test impression she had made of the boots. (Tr. I:163–86). Her testing was done in December, 1997. (Tr. I:185). It was Officer Rebeiro's opinion that the prints at the crime scene were consistent "in manufacturing characteristics with the overall pattern and shape of the design of the bottom of the shoe," and were consistent in "size, dimension [and] degree of wear" with the boots that had been given to her for comparison. (Tr. I:171–72). However, she could not say "to the exclusion of all others" that the footwear that had been submitted to her for comparison actually made the impressions at the scene. (Tr. I:172). *See also Barry I* at n. 3 ("Sergeant Deborah Rebeiro of the Massachusetts State police crime laboratory, an expert in footprint examination, testified as to the consistency between defendant's boots and the crime scene bootprints; however, she acknowledged that positive identification to the exclusion of all others was not possible in this case.").

There was no further evidence at trial about how the boots had been obtained. In connection with his motion for reconsideration of the denial of his motion for a new trial pursuant to Mass. R.Crim. P. 30(a) and (b), discussed *infra,* Barry submitted an affidavit containing the following information:

1. In June of 1995, I was arrested on a matter unrelated to the present case. I was arraigned in Worcester District Court and was ordered held on bail. I was further ordered to undergo an evaluation at Bridgewater State Hospital for approximately 20–30 days.

2. Upon completion of the evaluation at Bridgewater, I was transported to the Worcester County Jail and House of Correction in West Boylston. I arrived at the facility in shackles in the back seat of a cruiser.

3. When the cruiser reached the area outside the garage and stopped, a man in a sheriff's uniform approached and opened the rear door of the cruiser. He swung my legs out of the cruiser and began removing my boots.

4. At the time I asked, "What are you doing?" to which the man responded, "I'm taking your boots."

5. After I was charged with the thefts at West [Boylston] Trailer Sales, I discussed the taking of my boots with [trial counsel] Attorney Capone. I asked Mr. Capone if my boots could be suppressed. He told me that the evidence against me was weak and that I should not be concerned.

(Affidavit dated May 7, 2001, SA Ex. 13 at pp. 406–7, 774 N.E.2d 1098).

Additional facts will be discussed below where appropriate.

### Procedural History

On January 15, 1997, the Worcester County grand jury returned a 40–count indictment (No. 97–00033) against Barry arising out of the break-in at the West Boylston RV park. *See* Respondent's Memorandum of Law in Opposition to the Petition for Habeas Corpus ("Resp.Mem.") (Docket No. 9) at 2. A jury trial was held on January 21 and 22, 1998 on 34 of the 40 counts. (Pet. Mem. at 2). Barry was represented by John W. Capone, Esq., of Worcester, Massachusetts. The jury convicted Barry of larceny of a motor vehicle (Mass. Gen. Laws ch. 266, § 28), eight counts of larceny of property with a value of more than $250.00 (Mass. Gen. Laws ch. 266, § 30), larceny of property with a value of $250.00 or less (Mass. Gen. Laws ch. 266, § 30) and breaking and entering a truck or trailer (Mass. Gen. Laws ch. 266, § 20A). The jury acquitted Barry of twelve counts of malicious destruction of property and of eleven remaining counts of breaking and entering a truck or trailer with intent to commit a felony. (Pet. Mem. at 2).

Barry was sentenced on February 6, 1998. He was found to be a common and notorious thief pursuant to Mass. Gen. Laws ch. 266, § 40 and sentenced to a ten-to-fifteen year state prison term. On the same date he pleaded to guilty to indictment No. 97–0079, 1–3, charging him with assault by means of a dangerous weapon, larceny of property with a value of $250 or less and unauthorized use of a motor vehicle. (Pet. Mem. at 3). He also pleaded guilty to indictment No. 97–0088, 1–7, charging him with possession of a controlled substance, operating a motor vehicle to endanger, operating a motor vehicle under the influence of a controlled substance, failing to stop for a police officer, leaving the scene of an accident with personal injury, operating a motor vehicle after license suspension, and receiving a stolen vehicle. (Pet. Mem. at 3). These guilty pleas stem from a November 18, 1996 incident in Worcester and an October 1, 1996 incident in Auburn. *Barry I* at n. 2. Barry was sentenced to a concurrent 4–5 year state prison term for count 1 of Indictment No. 97–0079, a concurrent 10–15 year state prison term for count 7 of Indictment No. 97–00088, and a concurrent 2–year term in the House of Corrections for count 5 of Indictment No. 97–00088. (Resp. Mem. at 3). The remaining indictments were filed with the petitioner's consent.

On March 12, 1998, the petitioner filed a motion to revise and revoke his sentences and a motion to withdraw his guilty pleas. (Included in SA Ex. 4 at C.A. 21, 24). These motions were denied by the trial court. (Included in SA Ex. 4 at C.A. 32; *see also* Pet. Mem. at 4, n.4).

Meanwhile, represented by new counsel, Lawrence Friedman of Choate, Hall & Stewart, the petitioner appealed his jury convictions. Barry raised numerous grounds on appeal. (SA Ex. 2). However, while challenging the sufficiency of the evidence, and arguing that "only the police officer's testimony about the bootprint connected the defendant to the events at the West Boylston crime scene," counsel did not challenge either the officer's testimony or the admission of the boots. (SA Ex. 2 at 26). Counsel noted various other trial errors which he contended rose to the level of ineffective of assistance of counsel. (SA Ex. 2 at 24, n.1 and 25, n.2). Nevertheless, there was no claim that the failure to move to suppress the boots or to challenge Officer Morrissey's testimony constituted ineffective assistance of counsel.

In opposing the appeal, the Commonwealth did note the significance of the

footprint evidence. For example, the Commonwealth argued that among the evidence which supported the conviction was the fact that "[a] person wearing shoes consistent in brand, size, width, and wear to those defendant possessed a few days after the crimes left footprints at the site of the offenses." (SA Ex. 4 at 31, 32–33). Moreover the fact that "[t]he footprints went to and from the trailers that had broken door locks and windows," according to the Commonwealth, "supported the reasonable inference that defendant broke in and removed property from the trailers, carried stolen goods to the pickup truck, and loaded the plunder into the bed of the pickup truck for transport." (*Id.*). It was the footprint evidence which "placed defendant at the taking of the truck." (SA Ex. 4 at 35).

The Appeals Court affirmed the convictions as well as the trial judge's denial of the motion to withdraw the guilty pleas. With respect to the sufficiency of the evidence, the Appeals Court held as follows:

Although the defendant contends that the only evidence placing him at the RV Center is weak bootprint evidence, he fails to acknowledge the fact that he was apprehended 1.6 miles from the abandoned, stolen pickup truck in Augusta, Maine. Furthermore, testimonial evidence indicates that the defendant was driving a pickup "identical" to the one stolen from the RV Center. Also, despite the defendant's contentions to the contrary, the crime scene bootprints demonstrate active participation insofar as police testimony revealed that these prints traveled to and from the trailers returning to a specific spot. Thus, the evidence of bootprints consistent in numerous respects with the defendant's boots, indicating active participation, the testimony that the defendant was within days of the crime seen driving an identical pickup truck as that stolen from the

RV Center, that he was apprehended 1.6 miles from the abandoned truck, and that he gave false statements to the police, taken as a whole, constituted sufficient evidence to sustain the jury's verdict.

*Barry I.*

Barry, through appellate counsel, filed an ALOFAR. (SA Ex. 9). Therein, Barry contended that "this appeal challenges an Appeals Court decision holding common footprint evidence, alone, sufficient to prove both the defendant's presence at the crime scene and his active participation in the crimes charged." (SA Ex. 9 at 1). The SJC denied the ALOFAR without opinion. (SA Ex. 10).

Barry then filed a *pro se* Motion for A New Trial pursuant to Mass. R.Crim. P. 30(a) and (b). (SA Ex. 12 at 73). He also filed a motion for appointment of counsel and a motion to allow him to amend the motion for a new trial in the event that he obtained counsel. (*See* Resp. Mem. at 4; SA Ex. 11 at A9). Although he raised numerous ineffective assistance of counsel claims, Barry did not raise the claims that he is asserting in his present petition. Thus, Barry argued that he was denied the effective assistance of counsel because (1) trial counsel did not file a motion to dismiss the grand jury indictment which was tainted by exposure to irrelevant and prejudicial evidence; (2) trial counsel did not file a motion for a required finding of not guilty at the close of the government's case since there was no evidence that the items were stolen from the trailers; (3—6) trial counsel failed to object to various parts of the jury instructions; (7) trial counsel failed to object to the prosecutor's arguments where he argued his personal opinion; (8) trial counsel failed to call Richard Barry as a witness; (9–11) trial counsel inappropriately advised him to plead

guilty; and (12) appellate counsel failed to raise any of these issues. (SA Ex. 12 at 74–79; Resp. Mem. at 4–5; Pet. Mem. at 4–5).

On April 9, 2001, new counsel was appointed for the petitioner. (Pet. Mem. at 5). On April 17, 2001 the petitioner, through counsel, filed a motion to withdraw the *pro se* motion for a new trial. (Id.). On the same day however, a Superior Court judge (not the trial judge) denied the *pro se* motion, ruling that the claims had been waived, and that, "[h]aving examined the defendant's motion, supporting papers, affidavits and the legal memorandum of counsel, the court finds that defendant has not demonstrated that a miscarriage of justice is likely to have occurred." (SA 13 at 370–74). On April 20, 2001, the Superior Court judge denied the petitioner's motion to withdraw the *pro se* motion for a new trial. (Pet. Mem. at 5).

On May 18, 2001, the petitioner, through counsel, filed a motion for reconsideration of the *pro se* motion for a new trial, arguing that (1) Barry must be resentenced because he was improperly adjudicated a common and notorious thief, (2) the claims of ineffective assistance of counsel had not been waived by not filing them in the direct appeal, and (3) that trial counsel was ineffective for the additional reason that "trial counsel failed to object to the admission of a hearsay statement that was the only evidence that linked the defendant to the scene of the crime" and also "failed to request an instruction on the lesser included offense of unauthorized use of a motor vehicle, which failure gave rise to the defendant's adjudication as a common and notorious thief." (SA13 at 378–79). While not specifically identified as one of the claims being raised by the motion for reconsideration in the Summary of Argument section of counsel's motion, in the body of the motion counsel asked that the court consider whether trial counsel was ineffective in failing "to move to suppress the boots that were the only evidence offered by the Commonwealth to link the defendant to the scene of the crime." (SA Ex. 13 at 388–89). Counsel noted that this issue was not raised in the petitioner's *pro se* motion, but "ask[ed] that it be considered as an additional ground for reconsideration of his motion for a new trial." (SA Ex. 13 at 389, n. 1). In connection with the motion for reconsideration, Barry filed the affidavit relating to the seizure of his boots, as described above. (SA Ex. 13 at 406). Counsel also requested a hearing on the motion for reconsideration and requested discovery. (SA Ex 13 at 408, 412). These requests were all denied without opinion. (SA Ex. 13 at 408, 412). Barry appealed from the denial of his motion for a new trial as well as his motion for reconsideration, his motion for a hearing and his motion for discovery. (SA Ex. 13 at 375, 415).

In his brief to the Appeals Court, Barry argued, among other things, that trial counsel's failure to move to suppress the boots and failure to object to the hearsay testimony which linked him to the boots constituted ineffective assistance of counsel. (SA Ex. 11 at 1–3). In an unpublished Memorandum and Order Pursuant to Rule 1:28, on June 18, 2002 the Appeals Court ruled as follows:

> The balance of the arguments [other than the objections to sentencing] are all founded on ineffective assistance of counsel, on two levels: at the trial level and the appellate level in the direct appeal. Counsel on this second appeal, which is from denial of a motion for a new trial, suggests nothing that came to light after preparation of the direct appeal. The standard of review of action on a motion for a new trial is whether it appears that justice may not have been

done. Mass. R.Crim. P. 30(b), 378 Mass. 900 (1979). *Commonwealth v. Markham,* 10 Mass.App.Ct. 651, 653, 411 N.E.2d 494 (1980). Considering the potency of the evidence by which the defendant was convicted it does not appear that justice has not been done. Nonetheless, we have also reviewed the arguments presented on this second appeal to see whether any of them suggest a substantial risk of a miscarriage of justice, a standard similar to, and perhaps directly parallel with, that by which motions for a new trial are considered. See *Commonwealth v. Miranda,* 22 Mass.App.Ct. 10, 21, 490 N.E.2d 1195 (1986). None do.

*Barry II* SA Ex.16. Barry, through counsel, then filed an ALOFAR. (SA Ex. 17). The SJC denied the petition without opinion. (SA Ex. 18). This timely habeas petition was filed on April 14, 2003.

## III. *DISCUSSION*

### A. *Standard of Review—Generally*

■ The standard of review to be applied to Barry's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts .... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). An "unreasonable application is different from an incorrect one." *Id.* In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal citation and quotation omitted). This increment "need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, a habeas petitioner "must do more than merely identify an incorrect result." *Jackson v. Coalter,* 337 F.3d 74, 81 (1st Cir.2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000).

### B. *Procedural Default*

■ Another limitation on habeas review is that a federal court may not reach the merits of a habeas petition where the state court proceeded on an independent state ground, such as waiver. "A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a

fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state ground[s].' Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.' In such a case, '[c]onsiderations of comity and federalism bar the federal court's review.'" *Simpson v. Matesanz*, 175 F.3d 200, 205–06 (1st Cir.1999) (internal citations and punctuation omitted), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 803, 145 L.Ed.2d 677 (2000).

In the instant case, the Appeals Court ruled that Barry had waived his ineffective assistance of counsel claims by failing to raise them on his direct appeal. Consequently, on appeal from the denial of his motion for a new trial, and motion for reconsideration thereof, the Appeals Court reviewed the case to determine whether "a substantial risk of a miscarriage of justice" existed. *Barry II*, SA Ex. 16. This standard is "similar to, and perhaps directly parallel with, that by which motions for a new trial are considered," that standard being "whether it appears that justice may not have been done." *Id.* If the state court appropriately proceeded on an independent state ground—waiver—this court could not review the merits of Barry's claim.

### C. Ground One—Failure to Suppress the Boots

■ Barry's principal claim is that there was ineffective assistance of counsel in that trial counsel failed to move to suppress his boots which were taken from him while he was in custody on an unrelated charge. Assuming that the claim of ineffective assistance of counsel has been properly preserved, *see* discussion, *infra*, the standard of review was established in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). As the Court held:

The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* at 374–75, 106 S.Ct. at 2582–83 (citing *Strickland v. Washington*, 466 U.S. 668, 686, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)) (additional citation omitted). Thus, "[w]here the claimed omission in ineffective representation is the failure to file a suppression motion, the inquiry involves dual assessments. '[T]he defendant must show that the constitutional claim has merit and that there was a reasonable possibility that the verdict would have been different without the excludable evidence.'" *Commonwealth v. Anderson*, 58 Mass.App.Ct. 117, 127–28, 787 N.E.2d 1136, 1144 (2003) (quoting *Commonwealth v. Fletcher*, 52 Mass.App.

Ct. 166, 169, 752 N.E.2d 754, 757 (2001) (additional citation omitted)).

In the instant case, the respondent has not challenged Barry's contention that if a motion to suppress had been filed, the motion would have been allowed. However, in opposing Barry's motion for reconsideration, which raised the issue of the warrantless search for the first time, the Commonwealth did contend that the seizure of the boots was lawful. (SA Ex. 14 at 30–33). This court concludes that the a motion to suppress the boots would not have succeeded. Consequently, the respondent's claim of ineffective assistance of counsel in failing to move to suppress the boots cannot succeed.

### 1. *Merits of a Motion to Suppress*

■ As the facts presented by Barry establish, he was properly in custody for another crime at the time his boots were seized. A non-destructive mold of a boot was taken after it had been seized, and the boots were matched to footprints taken at the scene of the crime. At no time did the government obtain a warrant for the seizure of the boots or for the making of the mold.

This case is controlled by *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). There, clothing was taken from the defendant without a warrant, while he was in custody, and approximately 10 hours after his arrest. In finding that there was no violation of the defendant's constitutional rights, the Court held that:

> once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial. The result is the same where the property is not physically taken from the defendant until sometime after his incarceration.

*Id.* at 807–808, 94 S.Ct. at 1239. "Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial." *Id.* at 803–04, 94 S.Ct. at 1237. "Indeed," as the *Edwards* court held, "it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." *Id.* at 806, 94 S.Ct. at 1238. *See United States v. Sheehan*, 583 F.2d 30, 32 (1st Cir.1978) (citing *Edwards*, the court holds that "the Supreme Court has made it increasingly clear that a lawful arrest justifies a special latitude of both search and seizure of things found on the arrestee's person."). *See also* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.3(b) (4th ed.2004) (describing situations where inventoried property in police custody can be retrieved and used in evidence at a later date if later investigation establishes that the item has evidentiary value. *Edwards* holding is "supported by the longstanding principle that the police may, without first obtaining a warrant, seize items of evidence lawfully coming within their plain view"). Thus, while there may be limits imposed on an intrusive investigation of inventoried

items, such as analyzing documents seized (*see, e.g., Commonwealth v. Sullo*, 26 Mass.App.Ct. 766, 770–71, 532 N.E.2d 1219, 1221–22 (1989)), the case law consistently holds that a person's clothing may be seized and tested without raising a constitutional claim. *See, e.g., United States v. Monclavo–Cruz*, 662 F.2d 1285, 1290 (9th Cir.1981) (while *Edwards* exception to warrant requirement has been limited by other cases, no warrant needed for clothing of person in custody); *Westberry v. Mullaney*, 406 F.Supp. 407, 413 (D.Me. 1976) (where "a person has been taken into custody lawfully and is subject to incarceration in accordance with normal police procedures, he has no reasonable expectation of privacy as to his person and personal effects which is protected by the Fourth Amendment"), *aff'd*, 535 F.2d 1333 (1st Cir.1976) and *cert. denied*, 429 U.S. 889, 97 S.Ct. 245, 50 L.Ed.2d 172 (1976); *Commonwealth v. Street*, 56 Mass.App.Ct. 301, 307–09, 777 N.E.2d 184, 189–91 (2002) (sneakers and pants may be taken without a warrant from individual in custody); *Commonwealth v. Murphy*, 6 Mass.App. Ct. 335, 345, 375 N.E.2d 366, 372–73 (1978) (seizure of defendant's jacket prior to his arrest, but when he was in custody and at a time when there was probable cause for the arrest "was reasonable under the circumstances and did not result in any deprivation of the defendant's Fourth Amendment rights.").

The fact that Barry was under arrest for a different crime than the one for which the shoes were seized does not alter this result. As the court held in *State of*

*Washington v. Cheatam*, 150 Wash.2d 626, 81 P.3d 830 (2003) (surveying cases):

> most courts deciding this issue under the Fourth Amendment conclude that once an inmate's property is taken from him or her and inventoried and placed in a property room, the inmate's expectation of privacy is substantially or entirely reduced to the point that no constitutionally protectable interest remains. Thus, a "second look" at an inmate's inventoried property in connection with investigation of a crime unrelated to the one for which the defendant is arrested does not violate the constitution.

*Id.* at 635–37, 81 P.3d 830, 81 F.3d at 835–36 and cases cited (motion to suppress evidence of shoes taken from defendant when he was booked into jail on an unrelated charge properly denied). Moreover, in the instant case there was probable cause to charge Barry with, at least, larceny of the truck at the time the shoes were seized.[3] Thus, even if the seizure had to be part of the investigation of a crime for which probable cause to charge the defendant existed, that requirement was satisfied. *See, e.g., Commonwealth v. Walker*, 370 Mass. 548, 559–60, 350 N.E.2d 678, 687–88 (1976) (sneakers properly taken as part of a legitimate search incident to arrest even though defendant was in custody on an unrelated crime, where there was probable cause he committed the crime for which the sneakers were seized); *Commonwealth v. Tarver*, 369 Mass. 302, 309, 345 N.E.2d 671, 676 (1975) (seizure of hair

**3.** At the time the boots were seized, there was evidence that the perpetrator of the theft had been wearing boots, that Barry was seen in a truck identical to the stolen vehicle, and he was found in near proximity to the vehicle and lied to the police. Under such circumstances, although the police did not initially arrest him, there was probable cause to charge him with the theft of the truck. This

suspicious behavior distinguishes the case from *Commonwealth v. Linder*, 17 Mass.App. Ct. 967, 967–68, 458 N.E.2d 744 (1983), on which Barry relies, where the SJC found that merely finding a defendant in a stolen vehicle hours after the theft is insufficient to convict him of use of a motor vehicle without authority.

samples for use in an uncharged case proper where defendant was in custody for another crime, and probable cause existed that the defendant committed the crime being investigated).

Since Barry cannot establish that his Fourth Amendment claim is meritorious, his claim of ineffective assistance of counsel based on trial and appellate counsel's failure to assert the claim must fail.[4]

### 2. *Procedural Default*

■ Assuming, *arguendo*, that Barry could have prevailed on his motion to suppress, his habeas petition should be denied because this claim is procedurally defaulted.

Barry's claim of ineffective assistance of counsel based on the failure to move to suppress the boots was not raised on his direct appeal. Nor did Barry raise the claim in his rather comprehensive *pro se* motion for a new trial. Rather, it was not until counsel filed a motion for reconsideration of the denial of the motion for a new trial that the challenge was first presented to the court. Nevertheless, Barry argues strenuously that the issue was not waived. This court disagrees.

■ As a general statement, in Massachusetts the rule that "a claim not raised is waived" is regularly enforced and "firmly established." *Gunter*, 291 F.3d at 79 and cases cited. It is equally well-established that the state appellate court's decision to review a case under a "miscarriage of justice" standard following a failure to object

does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners." *Id.* at 79–80, and cases cited. *Accord Burks v. Dubois*, 55 F.3d 712, 716 n. 2 (1st Cir. 1995).

■ Nevertheless, Barry relies on cases which hold that the claim of ineffective assistance of counsel is appropriately raised in the context of a motion for a new trial. Those cases hold that a motion for a new trial is the appropriate vehicle for raising an ineffective assistance claim either when trial and appellate counsel are one and the same, or because a factual record was necessary to assess the merits of the claim. *See, e.g., Commonwealth v. LeFave*, 430 Mass. 169, 172 n. 3, 714 N.E.2d 805, 807 n. 3 (1999) ("Because counsel on the defendant's direct appeal were also her trial counsel, the failure of counsel to argue on direct appeal that they were ineffective at trial is not treated as a waiver"); *Commonwealth v. Fletcher*, 52 Mass.App.Ct. 166, 172, 752 N.E.2d 754, 759 (2001) (motion for new trial proper means of raising claim of ineffective assistance for failure to file motion to suppress where factual record needed to determine circumstances of warrantless search). Thus, "[a] claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record. But when the trial record provides an insufficient factual basis for appellate review, the claim of ineffective assistance is best left for resolution in the first in-

---

4. Barry argues that Massachusetts law differs from federal law on the standard for "plain view" searches. *See Commonwealth v. Santana*, 420 Mass. 205, 211 and n. 6, 649 N.E.2d 717, 721 and n. 6 (1995) (Massachusetts cases require that police officers come across an item inadvertently while federal law does not); *Commonwealth v. Balicki*, 436 Mass. 1, 8–9, 762 N.E.2d 290, 297–98 (2002) (court

confirms that inadvertence required under Massachusetts law, not federal law). Assuming that the "plain view" analysis is the appropriate analogy in the instant case (*see LaFave*, § 5.3(b) *supra* ), in connection with this habeas petition federal law is controlling. Habeas relief is not available to rectify errors of state law.

stance by the trial judge on a motion for new trial." *Commonwealth v. Adamides*, 37 Mass.App.Ct. 339, 344, 639 N.E.2d 1092, 1096 (1994) (internal quotation and citations omitted).

None of the circumstances which relieve a defendant of the obligation to raise an ineffective assistance of counsel claim on direct appeal exist in the instant case. There was different trial and appellate counsel, and appellate counsel could have challenged the failure to move to suppress the boots. In fact, appellate counsel did raise other claims of ineffective assistance on the direct appeal. Thus, the issue should have been raised on direct appeal. *See Commonwealth v. White*, 53 Mass. App.Ct. 142, 143, 757 N.E.2d 287, 288 (2001) (where defendant represented by different counsel on appeal and basis for claim existed at time of appeal, judge "may well have been correct in denying [post appeal motion for a new trial] on the waiver ground"); *Commonwealth v. Chase*, 433 Mass. 293, 297 n. 3, 741 N.E.2d 59, 64 n. 3 (2001) (fact that "ineffective representation claims are more appropriate to a motion for a new trial rather than to a direct appeal" in order to develop a factual record "has no bearing on the waiver issue." Claim waived when not raised by new counsel on direct appeal.)

Moreover, there are no additional facts needed to develop the record to evaluate the motion to suppress. There was testimony that the boots were taken from Barry by the Sheriff's Department at the House of Correction in West Boylston. It is undisputed that there was no warrant. Since these facts were basically all that were needed to decide a motion to suppress, there is no reason why the matter could not be raised and decided on direct appeal. *See Commonwealth v. Crespo*, 59 Mass.App.Ct. 926, 927, 798 N.E.2d 320, 322 (2003) (court will decide whether trial

counsel was constitutionally ineffective for failure to file a motion to suppress on direct appeal, since there was no need for further development of the record); *Commonwealth v. Anderson*, 58 Mass.App.Ct. at 124, & n. 8, 787 N.E.2d at 1142 & n. 8 (court decides one claim of ineffective assistance of counsel because "the factual basis of the claim appears indisputably on the trial record" while court declines to reach another claim which needs further factual development); *Commonwealth v. Castro*, 438 Mass. 160, 176, 778 N.E.2d 900, 913 (2002) (based on record on direct appeal it appears there was no ineffective assistance of counsel, but court "remit[s] any deeper examination of the claims to a motion for a new trial").

In any event, the record is clear that the petitioner did not include his claim of ineffective assistance of counsel in his first motion for a new trial. By "not pressing the point in presenting [his] first motion for a new trial" Barry "waived [his] right to challenge the ineffectiveness of [his] counsel on appeal." *Commonwealth v. Le-Fave*, 430 Mass. at 173, 714 N.E.2d at 808. The fact that Barry was proceeding *pro se* does not alter this conclusion. *See, e.g., Commonwealth v. Chase*, 433 Mass. at 301, 741 N.E.2d 59 n. 8, 741 N.E.2d at 67 n. 8; *Mains v. Commonwealth*, 433 Mass. 30, 35–36, 739 N.E.2d 1125, 1129–30 (2000). For these reasons, Barry's claim that trial counsel was ineffective in failing to move to suppress the boots, and that appellate counsel was ineffective in failing to raise the issue on appeal has been procedurally defaulted.

### 3. *Exceptions to the Procedural Default Rule*

■ In the event of a procedural default, federal habeas review nevertheless is available if "the prisoner can demonstrate cause for the default and actual prejudice

as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Barry does not meet these requirements.

### a. *Cause*

 "In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule.'" *Magee v. Harshbarger,* 16 F.3d 469, 471–72 (1st Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Here there was no impediment which precluded trial counsel from complying with the requirement that timely objection be made. Moreover, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray,* 477 U.S. at 486, 106 S.Ct. at 2644.

 Ineffective assistance of counsel may constitute "cause" for failing to object at trial. *See Gunter,* 291 F.3d at 81. However, when "the habeas petitioner wants to use ineffective assistance of counsel to establish cause to excuse a state procedural default, that ineffective assistance claim must itself ordinarily be fairly presented to the state courts and exhausted." *Id.* As noted above, however, the ineffective assistance of counsel claim for failing to suppress the boots has been procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 453, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000) ("an ineffective-assistance-of-counsel claim asserted as

cause for the procedural default of another claim can itself be procedurally defaulted . . ."). Therefore, Barry cannot satisfy the "cause" requirement.

### b. *Prejudice*

 Even assuming Barry could establish "cause" to excuse his procedural default, he cannot establish prejudice.[5] " 'The question is not whether the defendant would more likely than not have received a different verdict'" but whether " 'he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Strickler v. Greene,* 527 U.S. 263, 289–90, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)). Thus, the burden is on the petitioner "to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted." *Kimmelman v. Morrison,* 477 U.S. at 382 n. 7, 106 S.Ct. at 2587 n. 7. *See also id.* at 389, 106 S.Ct. at 2590 ("The question before the federal courts is whether a reasonable probability exists that the trial judge would have had a reasonable doubt concerning respondent's guilt if the [challenged item] and related testimony had been excluded.").

In the instant case, there is no question that the identification of the boots at the scene as being compatible with Barry's boots was important evidence. As detailed above, this testimony was cited by both the Commonwealth and the Appeals Court in their assessments of Barry's claims. Nevertheless, while the question is a very close one, it is not unreasonable for the state court to have concluded that there was no miscarriage of justice. Assuming suppres-

---

5. This is the same "prejudice" which a petitioner must prove to establish an ineffective

assistance of counsel claim.

sion of the boots and related testimony, there still would have been sufficient evidence to convict Barry of larceny of property, larceny of a motor vehicle, and breaking and entering a trailer at night with the intent to commit a felony. The evidence shows that someone broke into the RV Center during the night, after it had rained. That person, as evidenced by the bootprints left at the scene, spent considerable time at the crime scene going back and forth and actively participating in the removal of goods from the RVs. The petitioner was seen driving a pick-up "identical" to the one stolen from the RV Center. He was found 1.6 miles from the abandoned, stolen pick-up truck and appeared to have run through the woods, which was consistent with the testimony of an eyewitness who had seen men flee from the stolen vehicle. He was wearing boots. In addition, the petitioner gave a number of false statements to the police. Taken as a whole, there was sufficient evidence to sustain Barry's convictions. Thus, the petitioner cannot establish that the failure to suppress the boots caused him prejudice sufficient either to ignore his procedural default or to render his counsel's performance constitutionally defective. *See Commonwealth v. Lanoue*, 409 Mass. 1, 6, 563 N.E.2d 1367, 1370 (1990) (no ineffective assistance of counsel for failure to file motion to suppress where evidence sufficient to support conviction even absent disputed items).

#### c. *Miscarriage of Justice*

 Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." *Burks v. Dubois*, 55 F.3d at 717. As the *Burks* court explained:

This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence . . . . To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

*Id.* at 717–18 (internal citations omitted).

For the reasons detailed above, Barry has failed to establish that the admission of the boots calls into question whether he received a fair trial worthy of confidence. *See Derman v. United States*, 298 F.3d 34, 45 (1st Cir.), *cert. denied*, 537 U.S. 1048, 123 S.Ct. 636, 154 L.Ed.2d 522 (2002), and cases cited. This is not the exceptional case where the procedural default can be excused.

#### 4. *Trial Strategy*

As detailed above, Barry's claim of ineffective assistance of counsel fails because (1) a motion to suppress would not have prevailed, (2) the claim was procedurally defaulted, (3) no exception to the procedural default rule applies, and (4) any error did not prejudice the defendant and result in a miscarriage of justice. One further argument, however, requires comment. The Commonwealth argues that the decision not to move to suppress was clearly a tactical decision, thereby precluding the finding of ineffective assistance of counsel. This court disagrees.

Thus, the respondent argues:

However, the record demonstrates that trial counsel did not object to the testimony of how the boots were obtained because it was not disputed that the boots belonged to the petitioner. *See* Tr. I:49, Tr. II:203. In fact, as part of

the defense strategy, the petitioner's trial counsel stated during his opening statement that Officer Morrissey would testify that he observed the petitioner wearing brown work boots. *See* Tr. I:49. As his theory of defense, the petitioner's trial counsel asserted that the impressions made at the scene of the crime could not be linked to the petitioner's boots. *See* Tr. II: 205–206. Since this was a plausible defense strategy, appellate counsel reasonably decided that the issue of trial counsel's failure to object presented no likelihood of success on appeal. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" because such decisions are presumptively within the "wide range of professionally competent assistance").

Resp. Mem. (Docket No. 9) at 12. However, respondent has, in fact, cited to the Commonwealth's opening at Tr. I:49, not that of Barry's counsel. The fact that defense counsel mentioned the boots in closing (Tr. II:203), after the boots had been admitted, does not warrant the conclusion that a strategic decision had been made. Defense counsel was arguing that the evidence was not strong enough to prove that the boots belonging to Barry had made the prints that were found at the crime scene. This defense would have been even stronger if the boots were not part of the record at all. Therefore, the contention that the defense made a strategic choice not to challenge the admission of the boots "because it was not disputed that the boots belonged to the petitioner" is not supported by the record.

### D. *Ground Two—Failure to Object to Hearsay Testimony*

 As his second ground for relief, Barry argues that trial and appellate coun-

sel provided ineffective representation by failing to object to the "hearsay" testimony of Deputy Mark Morrissey (quoted above), which was the only evidence which tied the boots to the defendant. For a number of reasons, this argument is not persuasive.

It is undisputed that, on appeal, counsel did not challenge the now disputed testimony either as to its admissibility or on the grounds of ineffective assistance of counsel. Similarly, the present claim of ineffective assistance of counsel was not raised by Barry in his *pro se* motion for a new trial. For all the reasons detailed above, this claim has been procedurally defaulted.

Nor do any exceptions to the procedural default rule apply. There was no "cause" excusing the default. Nor was there any "prejudice." At most, an objection to the testimony would have resulted in another witness being called to testify as to the transfer of the boots from one police officer to another. It certainly may have been a strategic decision not to waste time eliciting undisputed testimony. Barry has never challenged the fact that the boots were his—in fact, he has confirmed that they are his. There was no prejudice in admitting the boots and related testimony.

Moreover, it is far from clear that an objection to the testimony would have been successful. For example, in *State v. Reid,* 135 N.H. 376, 605 A.2d 1050 (1992), the court rejected a challenge to the admissibility of the defendant's sneakers on the grounds that "none of the police officers testified as to who removed the sneakers from the defendant's feet." *Id.* at 383, 605 A.2d at 1054. As the court held:

The proof necessary to connect an evidentiary exhibit to a defendant may be made by circumstantial evidence. The State need only demonstrate a rational

basis from which to conclude that the exhibit did, in fact, belong to the defendant. The contested evidence, if otherwise, relevant, should be admitted once a prima facie case has been made on the issue of authentication. Once the evidence is admitted, the rest is up to the jury.

*Id.* (relying on State rule identical to Fed. R.Evid. 901) (internal punctuation and citations omitted). In the instant case, there was a rational basis to conclude that the boots belonged to Barry based on the evidence presented.

Finally, for the reasons detailed above, this court concludes that there was no miscarriage of justice. Therefore, the claim of ineffective assistance of counsel for failure to object to the admissibility of Officer Morrissey's testimony is without merit.

### IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Barry's petition for a writ of habeas corpus be DENIED.[6]

Aug. 17, 2005.

---

**6.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See*